MICHIGAN LABORERS' HEALTH CARE FUND, Michigan Laborers' Vacation Fund, Michigan Laborers' Training Fund, Michigan Laborers' Pension Fund, Michigan Laborers' Employers' Cooperation and Education Trust Fund, and Michigan Laborers' Annuity Fund, Plaintiffs,

v.

TADDIE CONSTRUCTION, INC. and Thomas Taddie, jointly and severally, Defendants.

No. 00–40017.

United States District Court, E.D. Michigan, Southern Division.

Oct. 31, 2000.

Michael J. Bommarito, Miller, Cohen, Southfield, MI, for plaintiff.

Andrew M. Eggan, Pear, Sperling, Ypsilanti, MI, for defendant.

## ORDER

GADOLA, District Judge.

Before the Court are Plaintiffs' motions for partial summary judgment [docket entries 43, 44 and 45]. For the following reasons, the Court grants in part and denies in part Plaintiffs' motions.

## I BACKGROUND

Plaintiffs are the Michigan Laborers' Health Care Fund, Michigan Laborers' Vacation Fund, Michigan Laborers' Training Fund, Michigan Laborers' Pension Fund, Michigan Laborers' Employees' Cooperation and Education Trust Fund, and Michigan Laborers' Annuity Fund ["the Funds"]. Defendants are Taddie Construction, Inc. and Thomas Taddie. Thomas Taddie was the president, vice-president, secretary, treasurer, sole incorporator, and sole shareholder of Taddie Construction.

Defendant Thomas Taddie, president of Taddie Construction, executed a labor agreement with the State of Michigan Laborers' District Council ("the Union") on December 19, 1985. Pursuant to that agreement, Taddie Construction obliged itself to make fringe-benefit contributions to the Funds on behalf of laborers.

That contract contained a rollover clause, which dictated that

[t]his agreement covering Open Cut Construction and Tunnel, Shaft and Caisson Construction shall remain in full force and effect until September 1, 1996, and from year to year thereafter unless written notice of desire to change or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to the aforementioned dates. Such written notice shall specify any changes or amendments desired by the party giving such notice and shall be sent by registered mail to the other party. (Pl.Ex. B, p. 54.)

Defendant Taddie Construction could thus prevent annual renewal only by giving proper written-notice of its intention to terminate the contract at least sixty days before September 1 of any given year. On July 2, 1997, sixty-one days before September 1, Thomas Taddie sent the Union a letter stating that Taddie Construction intended to terminate the contract. The Union did not receive that letter until July 7, 1997, however, which was after the sixty-day limit contained in the contract. The Union, accordingly, sent Mr. Taddie a letter asserting that, under the terms of the contract, it did not consider the agreement terminated until September 1, 1998 because of Defendants' failure to provide at least sixty days' notice of termination.

Defendant Taddie Construction continued to employ laborers after September, 1997. It had already fallen behind, however, in its payments to the Funds. Plaintiffs' audits revealed that Taddie Construction was delinquent in the amount of $31,488.32 through December, 1996, and delinquent in the amount of $9,390.36 from January through September, 1997. Taddie Construction signed consent judgments for both of these amounts in 1999. (Pl.Ex. D and Ex. E.)

Defendant Taddie Construction dissolved on July 15, 1997 because of its failure to file annual reports.

Plaintiffs bring this action pursuant to §§ 502 and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 and 1145 and § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) to compel Defendants to pay delinquent fringe-benefit contributions and assessments. Plaintiffs move for summary judgment as to three issues: (1) the liability of Defendant Taddie Construction, Inc.; (2) the individual liability of Defendant Thomas Taddie; and (3) damages. Regarding the latter issue, Plaintiffs seek $35,910.18 in unpaid contributions for the period covering October, 1997 through June, 1998, $10,073.57 in interest, $10,073.57 in double interest,

$3,057.26 in late-payment assessments, and $14,331.00 in attorneys' fees and costs.

## II LEGAL STANDARD

The Court will grant a motion for summary judgment if the evidence demonstrates that there is no genuine issue as to any material fact, and that the movants are entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must read the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *See Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1979). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The Court's function is not to weigh the evidence and determine the truth of the matters asserted, "but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## III ANALYSIS

### A Liability of Defendant Taddie Construction

The crux of Plaintiffs' claim is for delinquent fringe-benefit contributions due between October, 1997 and June, 1998. For Taddie Construction to owe the Funds such payments, the labor agreement would have to have been renewed through its rollover clause.

■ Rollover, or "evergreen," clauses in collective-bargaining agreements, such as the one delineated above, are legally enforceable. *See Trustees of the B.A.C. Local 32 Ins. Fund. v. Fantin Enterprises, Inc.*, 163 F.3d 965, 968–69 (6th Cir.1998) (citing *Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451

(1998)). When a rollover clause renews a contract, all of the contractual obligations continue for the period of renewal. *See id.* at 969. In this case, if the rollover clause obligated Taddie Construction to make payments to the Funds until September, 1998, there would be no issue of material fact as to whether its failure to pay those amounts would create liability. Clearly, it would.

The salient question here thus becomes: what was the impact of Mr. Taddie's letter of July 2, 1997? If that letter terminated the contract before the rollover clause renewed it, Taddie Construction would not be liable for payments allegedly due after September 1, 1997. If it did not, then Taddie Construction would be liable for payments through September 1, 1998; i.e., there would be no issue of material fact as to whether Taddie Construction was liable for all of the delinquent payments at bar.

■ Mr. Taddie's letter of July 2, 1997 did not terminate the contract before September 1, 1998. There is no issue of material fact as to whether the purported termination of the collective bargaining-agreement was untimely and thus ineffective. Clearly, it was.

The date for ascertaining whether timely notice is given under a labor agreement is "the date the Union actually received notice of intent to terminate." *Chicago Painters and Decorators Pension, Health, and Welfare Funds v. Hickory Decorating Co.*, No. 85–C–6829, 1986 WL 12273, at * 1 (N.D.Ill. Oct.23, 1986); *accord Illinois Dist. Council No. 1 of the Int'l Union of Bricklayers v. R & R Masonry, Inc.*, No. 94–C–7377, 1996 WL 627635, at **6–7 (N.D.Ill. Oct.28, 1996) (holding that a letter mailed on the last day of a sixty-day notice period, but not received before the next day, was not effective to terminate a labor agreement); *cf. Restatement (Second) of Contracts* § 68, Comment A (1981) (stating that "a revocation if sent from a distance must be received in order to be effectual"). In this case, the date the Union actually received written notice of Taddie Con-

struction's intent to terminate the contract was July 7, which was well within sixty days of September 1. It follows that Defendants' attempt to terminate the contract was not effective until September 1, 1998, and that Defendant Taddie Construction is liable for any payments due to the Funds between October, 1997 and June, 1998.

■ Defendant Taddie Construction nonetheless argues for something akin to equitable estoppel. Taddie Construction contends that this case is analogous to *Laborers Health and Welfare Trust Fund v. Delbon,* 199 F.3d 1109 (9th Cir.2000), in which the Ninth Circuit reasoned that the plaintiffs had abandoned their cause of action because they had waited more than ten years after the employer's alleged untimely attempt at termination to file suit. *See id.* at 1110. Here, however, Plaintiffs filed suit within three years of the untimely attempt at termination, and only after protracted attempts at a negotiated solution to the problem. This case is thus more like *Trustees of the Michigan Laborers' Health Care Fund v. Gibbons,* 209 F.3d 587 (6th Cir.2000), in which the Sixth Circuit held that, *inter alia,* the movants could not establish that they had justifiably relied on the plaintiffs' silence when the plaintiffs had, in fact, been trying to negotiate an end to the dispute with the defendants.

■ Defendants also argue that Mr. Taddie provided oral notice to Plaintiffs before the sixty-day deadline. That argument is irrelevant. The labor agreement specifically required Taddie Construction to provide written, not oral, notice of termination to the Funds. Taddie Construction's oral attempt at termination was thus ineffectual and is no bar to Defendants' liability. *See Trustees of Asbestos Workers Local Union No. 25 Ins. Trust Fund v. Metro Insulators, Inc.,* No. 89–1656, 1990 WL 67403, at *3 (6th Cir. May 22, 1990) (citing *International Union of Operating Engineers v. Dahlem Constr. Co.,* 193 F.2d 470 (6th Cir.1951)).

This Court holds that there is no genuine issue of material fact as to the liability of Defendant Taddie Construction, Inc. regarding fringe-benefit contributions due between October, 1997 and June, 1998, and grants summary judgment to Plaintiffs as to this issue.

## B · Individual Liability of Thomas Taddie

Ordinarily, the officers and shareholders of a corporation are not liable for the actions of the corporate entity. Plaintiffs argue that Defendant Thomas Taddie is liable as an individual because: (1) there was no corporate entity when the alleged wrongs were committed and (2) even if the corporation had existed, the Court should pierce the corporate veil in this case.

■ The corporate entity was administratively dissolved on July 15, 1997 for failure to file annual reports. A corporation does not cease to exist when its charter becomes void. *See Stott v. Stott Realty Co.,* 284 N.W. 635, 638 (Mich.1939). As a general rule, moreover, a corporate officer is not personally liable for debts a corporation incurred before its charter became invalid. *See Honegger's & Company, Inc. v. Frog Valley Farm Services,* 98 Mich. App. 568, 296 N.W.2d 314, 315 (1980).

■ Michigan law requires, however, that officers of a corporation that is automatically dissolved carry on no business except for the purposes of winding up affairs. *See id.* It follows that, after automatic dissolution, corporate officers who carry on business that is not related to the winding up of corporate affairs "are individually liable, even though the business was conducted in the corporate name." 19 Am.Jur.2d *Corporations* § 2887 (1986). Mr. Taddie carried on business that was unrelated to winding up, and in the corporate name, after the automatic dissolution of July 15, 1997. Most importantly, he continued to employ laborers, thus incurring new debts to the Funds. Mr. Taddie is therefore liable as an individual for

those debts incurred to the Funds after the dissolution of July 15, 1997. There is no genuine issue of material fact as to this matter.

 Another reason that the Court reaches this conclusion is that this is a case in which the corporate veil should be pierced. Under Michigan law, the following standard for piercing the corporate veil applies: "First, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the plaintiff." *Foodland Distributors v. Al–Naimi,* 220 Mich.App. 453, 559 N.W.2d 379, 381 (1996) (citation omitted). Piercing the corporate veil is particularly appropriate in cases involving benefits under ERISA because Congress passed that statute to protect workers from being deprived of benefits because of corporate malfeasance. *See Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.,* 872 F.2d 702, 705 (6th Cir.1988).

Regarding the first element, the Court notes that: Mr. Taddie was the sole-shareholder, president, vice-president, secretary, and treasurer of the corporation; his compensation was not set forth in any document; and he made loans to he corporation of roughly $250,000, of which only about $20,000 was ever paid back. Mr. Taddie ostensibly recorded those loans on paper, but he could not adduce evidence that those papers included terms of repayment. Mr. Taddie avers that he observed corporate formalities, but was unable to produce any minutes of corporate meetings or show that the corporation ever declared any dividends. These facts suffice to establish that the corporation was a mere instrumentality of Mr. Taddie. *Cf. Soloman v. Western Hills Development Co.,* 110 Mich.App. 257, 312 N.W.2d 428, 432 (1981) (reasoning that disregard of formalities blurred the distinction between the corporation and its shareholders).

Regarding the element of a wrong, any illegality would suffice to establish this element. In fact, even conduct short of the illegal could support element two. Michigan law does not require a showing of fraud or illegality before the corporate form will be disregarded. "While there is no question that fraud justifies piercing the corporate veil, there is ample authority under Michigan law for finding parent corporation liability through veil piercing for less egregious unjustified use of the corporate form." *United States v. Cordova Chemical Co. of Mich.,* 59 F.3d 584, 597 (6th Cir.1995) (Ryan, J. dissenting) (citing cases), *vacated by United States v. Bestfoods,* 524 U.S. 51, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). Because Plaintiffs assert that Mr. Taddie used the corporate form, as discussed above, to improperly fail to pay fringe benefits, the element of a wrong exists.

As to prong three, Plaintiffs have shown, for reasons discussed below, that they suffered a loss because of Mr. Taddie's actions. This loss, in the context of an action under ERISA, militates strongly in favor of piercing the corporate veil.

For the reasons set forth above, the Court pierces the corporate veil and holds that Defendant Thomas Taddie is, as an individual, jointly and severally liable for Defendant Taddie Construction's delinquent fringe-benefit payments. The Court grants Plaintiffs' motion for summary judgment as to this issue.

### C Damages

Plaintiffs' auditor has calculated that Defendants owe: $35,950.18 in unpaid contributions for the period covering October, 1997 through June, 1998; $10,073.57 in interest; $10,073.57 in double interest; $3,057.26 in late payment assessments; and, $14,331.00 in attorneys' fees and costs.

 Defendants have adduced no evidence that they had maintained records that would allow a determination of what percentage of time laborers spent on work covered by the contract. That shifts the

burden to Defendants to disprove Plaintiffs' figures regarding delinquent contributions. *See Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 693–97 (6th Cir.1994). Because Defendants did not do so, they must pay contributions on all hours worked by laborers, whether those hours were covered by the collective bargaining agreement or not. *See id.*

Defendants argue otherwise. They contend that *Grimaldi* dealt with calculation of damages after trial. Citing *Illinois Conference of Teamsters v. Steve Gilbert Trucking*, 71 F.3d 1361 (7th Cir.1995), Defendants argue that their failure to keep adequate records, at most, creates an issue of material fact as to the issue of damages. *See id.* at 1367. In *Steve Gilbert*, however, the Seventh Circuit held that summary judgment was not appropriate because the nonmoving party had produced some evidence as to the amount of work for which contributions were owed. *See id.*

Here, Defendants have adduced no evidence as to what percentage of time laborers spent on work covered by the labor agreement. The Court thus concludes that Defendants have not met their burden of disproving Plaintiffs' figures. The Court therefore credits Plaintiffs' figures, which are based on all hours worked by employees. Given Defendants' failure to adduce records that would dispute those numbers, the Court holds that there is no issue of material fact as to damages for unpaid contributions, and therefore must grant summary judgment to Plaintiffs as to the $35,950.18 they seek for unpaid, delinquent contributions.

Plaintiffs also seek interest and double-interest. Plaintiffs are entitled to interest at the rate provided in the labor agreement, or, if there is no rate provided in the contract, to the rate prescribed by 26 U.S.C. § 6621. *See Board of Trustees of Airconditioning and Refrigeration Indus. Health and Welfare Trust Fund v. J.R.D. Mechanical Services, Inc.*, 99 F.Supp.2d 1115, 1119 (C.D.Cal.1999). Plaintiffs rely on the supplemental affidavit of their auditor, Michael J. Gauthier, to establish that the rate of interest on the delinquent funds is "12% per year" on the unpaid amounts. (Supplemental Aff. of Michael Gauthier at ¶ 8). But this affidavit points to no provision of the contract that would support that conclusion. The Court therefore grants Plaintiffs summary judgment for interest on the unpaid, delinquent contributions calculated according to the rate prescribed by 26 U.S.C. § 6621.

Regarding the double-interest that Plaintiffs seek, pursuant to 29 U.S.C. 1132(g)(2)(C)(i) they are entitled to double-interest equal to the interest on the unpaid contributions. The Court thus grants Plaintiffs summary judgment as to double-interest in an amount equal to the above calculation of interest pursuant to 26 U.S.C. § 6621.

 The Court now turns the attorneys' fees that Plaintiffs seek. The Court must consider five factors when evaluating whether to award attorneys' fees under ERISA:

(1) the degree of the opposing party's culpability or bad faith;

(2) the opposing party's ability to satisfy an award of attorney's fees;

(3) the deterrent effect of an award on other persons under similar circumstances;

(4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and

(5) the relative merits of the parties' positions. *Secretary of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir.1985) (citation omitted).

Here, Plaintiffs have adduced no evidence as to any of these factors. Particularly relevant is the lack of any evidence that Defendants have taken their positions in bad faith. *See Central States, Southeast and Southwest Areas Pension Fund v. 888 Corp.*, 813 F.2d 760, 767 (6th Cir.1987) (reversing an award of attorneys' fees

where bad faith had not been shown); *Ahng v. Allsteel, Inc.*, 96 F.3d 1033, 1037 (7th Cir.1996) (reasoning that attorneys' fees should not be awarded under § 1132(g) if the losing party's arguments were made in good faith). The Court thus denies Plaintiffs summary judgment as to attorneys' fees.

Finally, the Court turns to the $3,057.26 in late-payment assessments toward which Plaintiffs seek summary judgment. Assessments that reflect contributions paid before judgment, but paid late, are not recoverable under § 1132(g). *See In re Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 389 (6th Cir.1991). Such payments may be recoverable pursuant to a liquidated-damages provision of a labor agreement. *See id.* at 390.

In this case, Plaintiffs' auditor avers, without citing a provision of the contract, that these monies are due pursuant to "the Funds' collection assessment program." (Supplemental Aff. of Michael Gauthier at ¶ 9.) Upon examination of the parties' labor agreement, however, the Court is unable to find a liquidated-damages provision. (1996–1999 Agreement at Art. XIII (Violation of Fringe Benefit Contributions).) Because there is, at the very least, an issue of fact as to Plaintiffs' entitlement to late-payment assessments, the Court denies Plaintiffs summary judgment as to the $3,057.26 in late-payment assessments.

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Plaintiffs' motions for partial summary judgment as to Defendants Taddie Construction, Inc.'s and Thomas Taddie's liability [docket entries 43 and 44] are **GRANTED** and that both Defendants are **JOINTLY AND SEVERALLY LIABLE.** IT IS FURTHER ORDERED that Plaintiffs' motion for partial summary judgment as to damages [docket entry 45] is **GRANTED IN PART AND DENIED IN PART. IT IS FURTHER ORDERED** that Defendants will pay Plaintiffs $35,950.18 for delinquent, unpaid contributions, plus interest calculated as per 26 U.S.C. § 6621. **IT IS FURTHER ORDERED** that Defendants will pay Plaintiffs double-interest in an amount equal to the interest calculated as per 26 U.S.C. § 6621. **IT IS FURTHER ORDERED** that Defendants will make all of these payments within thirty days of receipt of this order.

**SO ORDERED.**