RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0305P (6th Cir.)
File Name: 01a0305p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ROBERT LITTLE,
   *Plaintiff-Appellant,*

   *v.*

BP EXPLORATION & OIL
COMPANY; RICHARD
BRUZINA, Individually and in
his capacity as store manager
for BP Oil Company,
   *Defendants-Appellees.*

No. 00-3122

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 97-01162—Herman J. Weber, District Judge.

Argued: July 31, 2001

Decided and Filed: September 6, 2001

Before: CLAY, GILMAN, and WALLACE, Circuit
Judges.[*]

_____

[*]The Honorable J. Clifford Wallace, Circuit Judge of the United
States Court of Appeals for the Ninth Circuit, sitting by designation.

1

---

**COUNSEL**

**ARGUED:** William D. Bell, Sr., Cincinnati, Ohio, for Appellant. Robert W. Maxwell II, KEATING, MUETHING & KLEKAMP, Cincinnati, Ohio, for Appellees. **ON BRIEF:** William D. Bell, Sr., Cincinnati, Ohio, for Appellant. Robert W. Maxwell II, KEATING, MUETHING & KLEKAMP, Cincinnati, Ohio, for Appellees.

---

**OPINION**

---

CLAY, Circuit Judge. Plaintiff, Robert Little, appeals from the district court's order granting summary judgment to Defendants, BP Exploration & Oil Co. ("BP") and Richard Bruzina, on his Title VII retaliation claim. Plaintiff's primary contentions on appeal are that the district court erroneously concluded that (1) he had not presented sufficient evidence to establish a causal connection between the filing of his previous EEOC complaints and BP's suspension and termination of his employment; and (2) Defendant Bruzina could not be held individually liable for violations of Title VII. For the following reasons we **AFFIRM** the district court's dismissal of Plaintiff's Title VII action against Defendant Bruzina, but **REVERSE** the district court's grant of summary judgment to Defendant BP on Plaintiff's retaliation claim and **REMAND** for further proceedings consistent with this Court's opinion.

**BACKGROUND**

Plaintiff, an African American male, began working for BP on July 15, 1995 at BP's Winton location in Cincinnati,

**CONCLUSION**

Accordingly, we **AFFIRM** the district court's order insofar as it granted summary judgment to Defendant Bruzina. However, we **REVERSE** the district court's grant of summary judgment to Defendant BP on Plaintiff's retaliation claim. This case is **REMANDED** for further proceedings consistent with the opinion of this Court.

indicates that Plaintiff was disciplined on several occasions. Plaintiff also presented evidence tending to show that he was disciplined, in fact suspended and later terminated, for not wearing his uniform pants while other workers were not so disciplined. In his third EEOC complaint, the catalyst for the instant lawsuit, Plaintiff stated that "just before I was sent home on suspension Richard [Bruzina], the station manager heard me call the EEOC investigator on my case to tell her I being [sic] disciplined for having on the wrong pants when no one else dressed like me was being written up." (J.A. at 108.) From these facts, a reasonable jury could infer that Plaintiff's filing of the EEOC complaint prompted Defendant to discipline Plaintiff for conduct which might not normally warrant disciplinary action, or at least to the extent of the disciplinary action Plaintiff suffered, including Plaintiff's suspension and termination. Following the logic of *Harrison* and *Moore*, the temporal proximity, when considered with the other evidence of retaliatory conduct, is sufficient to create a genuine issue of material as to whether Plaintiff was suspended and later terminated because he filed two EEOC complaints and complained of racially discriminatory treatment. Therefore, Plaintiff's Title VII retaliation claim should have survived summary judgment.

---

first EEOC charge. In both his deposition testimony and the second EEOC complaint, Plaintiff states that the accusations of harassment and theft that he and Shields now attribute to the coercion of BP management occurred in August and September of 1996. It is reasonable to conclude, based on the sequence of events, that a meeting in which BP management told employees to file false charges of theft and harassment against Plaintiff occurred within close proximity to the dates of the actual false charges. Moreover, it is reasonable to conclude that the meeting with BP management occurred at least after the filing of the first EEOC complaint in February 1996, which was more than five months before the false claims of harassment and theft were made; it would appear illogical for an employee who is threatened with loss of job unless certain action was taken to wait some five or more months to act accordingly to preserve his or her job. We therefore conclude that a reasonable jury could conclude that the meetings with BP management referenced in the Shields affidavit occurred after Plaintiff filed his first EEOC complaint.

Ohio.[1] For much of the relevant time period, Bruzina was Plaintiff's supervisor. During the course of his employment with BP, Plaintiff filed two EEOC complaints. Plaintiff filed a third EEOC complaint after his termination.

### The First EEOC Complaint

Brenda Hines was the manager of the Winton location when Plaintiff started working for BP. Shortly after he began working for BP, Plaintiff reported to the BP district office that he observed Hines engaging in illegal activity, including purchasing stolen goods. After Hines was transferred to another BP location, Chuck Begley became the new manager at the Winton location. Soon thereafter, Begley orally terminated Plaintiff for missing a mandatory meeting. Plaintiff reported his termination to the district office and was rehired. Plaintiff was then reassigned to BP's Mitchell location, also in Cincinnati, Ohio. Begley was also the manager at the Mitchell location.

Plaintiff testified that he was forced by Begley to wash the fuel pumps in cold weather and to paint curbs while it was snowing. Plaintiff also testified that Begley failed to provide Plaintiff with a winter jacket while he was working outdoors. According to Plaintiff, Begley could be heard singing a song about "flies in the buttermilk" whenever Plaintiff was in his presence. Plaintiff also claims that Begley reduced his work hours from twenty per week to four per week after he reported that he had been physically pushed by Diane Palmer, a line leader with supervisory authority over non-managerial employees. Begley also issued two write-ups to Plaintiff after he reported Palmer's conduct.

This series of events led Plaintiff to file a complaint with the Ohio Civil Rights Commission on February 27, 1996

---

[1] The record is not clear, and the parties cannot agree, whether Plaintiff was hired as a groundskeeper or a cashier. We, however, do not deem the resolution of this factual dispute essential to the opinion of this Court.

alleging race discrimination.  After an investigation by the EEOC Commission, Plaintiff and Defendant BP reached a compromise settlement wherein Plaintiff would withdraw his complaint and BP would ensure that Plaintiff received at least $5.50 per hour and an average of twenty hours per week of work time.  In addition, Plaintiff agreed that he would not file a lawsuit based on the allegations that supported the first EEOC complaint.

### The Second EEOC Complaint

Plaintiff testified that after the first EEOC complaint was withdrawn, he continued to be the target of retaliatory and discriminatory treatment.  As a result, on October 21, 1996, Plaintiff filed a second EEOC complaint in which he alleged retaliation for filing the first complaint.

Plaintiff claimed that he was a constant target of derogatory racial names and harassment.  Plaintiff also stated that fellow-employees were told that in order to protect their own jobs, they should file false reports of theft and harassment against Plaintiff; these false reports were designed to give BP a reason to terminate Plaintiff's employment.

To support his claim, Plaintiff submitted an unsworn letter from a fellow-employee, Elyse Blakely, who stated that she was told that if she wanted to keep her job, she should file a harassment claim against Plaintiff with the police.  In addition, Plaintiff submitted the affidavit of Angela Shields, who averred that Plaintiff was treated in a discriminatory manner because of his race.  The affidavit also stated that Shields was "present during conversations where the supervisory personnel of the Defendant BP directed me and several of my fellow employees to make false accusations and complaints against Robert Little so that BP could use the same as justification for terminating Robert Little from employment." (J.A. at 173-74.)  Shields and other employees were told that "if we did not make the claims and allegations against Robert Little we would be fired or 'let go' from our employment positions." (J.A. at 174.)  Shields and other

[t]he proximity in time between the increased isolation and the filing of the EEOC complaint allows an inference by the jury that the isolation was in retaliation for undertaking the protected activity of filing the complaint.  Other incidents that occurred after plaintiff filed the EEOC complaint were related to the jury by plaintiff and others.   These include more frequent disciplinary writeups of plaintiff for trivial matters and unwarranted criticism of plaintiff's work.  When viewed as a whole these separate incidents support the jury's finding that defendants retaliated against plaintiff.

*Id.* (citation omitted).

In the case at bar, as in *Moore* and *Harrison*, Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether Plaintiff's suspension and termination was prompted by the filing of his two previous EEOC complaints.  Plaintiff was terminated less than a year after the first complaint was filed and about three months after the filing of his second EEOC complaint.

In addition to the temporal proximity between the filing of the complaints and Plaintiff's suspension and termination, there is additional evidence suggesting that Plaintiff was a target of retaliation.  Plaintiff presented the affidavit of his fellow employee, Shields, that recounted meetings where she and other workers were told to make false claims of theft and harassment against Plaintiff or lose their jobs.[4]  The record

---

[4]The district court discounted the Shields affidavit because the affidavit did not state when the threats mentioned therein occurred.  The district court therefore concluded that there was no basis to infer that employees were threatened with loss of their jobs unless they filed false allegations against Plaintiffs in retaliation for Plaintiff's filing of the two EEOC charges.  We disagree with the district court's conclusion.  While the Shields affidavit did not give the date on which the conversations with BP management occurred, drawing all reasonable inferences in Plaintiff's favor, as we must, we conclude that the record, particularly Plaintiff's EEOC complaint and his deposition testimony, supports a conclusion that the conversations with BP management occurred after Plaintiff filed the

F.3d at 1118. In *Harrison*, the plaintiff was suspended in August 1991; the plaintiff filed an EEOC complaint after his suspension and was thereafter discharged in November 1992. *Id.* This Court held that temporal proximity in combination with the evidence of retaliatory conduct was sufficient to establish a causal connection between the protected activity and the adverse employment action. The Court noted,

> [a]t most, one year and three months elapsed between his filing of a charge and his termination. In addition, the evidence showed that three employees feared retaliation because they testified at Mr. Harrison's hearing, and that [the supervisor] made repeated comments that suggested he would not hesitate to run employees out of his department. This evidence, taken together with the timetable of Mr. Harrison's EEOC charge and termination, convinces us that the plaintiff established a prima facie case of retaliation.
>
> More important, however, is the fact that study of the record in this case reveals an atmosphere in which the plaintiff's activities were scrutinized more carefully than those of comparably situated employees, both black and white, and that the defendants took every opportunity to make his life as an employee unpleasant. . . . [W]e conclude that [the evidence] does support a finding of retaliation.

*Id.* at 1119.

This Court reached a similar conclusion in *Moore*, holding that the plaintiff had presented sufficient evidence to show that his isolation was prompted by the filing of his EEOC complaint. 171 F.3d at 1080. In *Moore*, the Court stated that "[t]he causal connection between the adverse employment action and the protected activity, here the filing of a complaint with the EEOC, may be established by demonstrating that the adverse action was taken shortly after plaintiff filed the complaint and by showing that he was treated differently from other employees." *Id.* The Court further reasoned that,

employees therefore "did lie on and make false claims of harassment and theft against Robert Little." (J.A. at 174.)

**The Third EEOC Complaint and Plaintiff's Lawsuit**

While the second EEOC investigation was pending, Plaintiff was suspended on January 4, 1997, and later terminated on January 24, 1997, for insubordination. Plaintiff was terminated because he was out of uniform and refused to wear his uniform after being admonished by Defendant Bruzina. Plaintiff responds that while he was being admonished for failing to wear his uniform, other employees who did not wear their uniforms were not similarly treated. Plaintiff's termination led him to file a third EEOC complaint alleging retaliation.

In the third EEOC Complaint, Plaintiff alleged that he had been "retaliated against in violation of Title VII because I had filed two previous charges of discrimination" against BP. (J.A. at 108.) He further stated,

> [i]n the situation for I [sic] which I was allegedly insubordinate I was only pointing out that I was being admonished about not having the proper uniform pants when other employees were dressed the same way and nothing was being said to them. Also just before I was sent home on suspension [Bruzina], the station manager heard me call the EEOC investigator on my case to tell her I [sic] being disciplined for having on the wrong pants when no one else dressed like me was being written up.

(J.A. at 108.)

Plaintiff requested and received a right to sue letter from the EEOC on September 30, 1997. The right to sue letter only covers Plaintiff's third EEOC complaint. It does not, as Plaintiff contends, cover both the second and third complaints. The third complaint, however, charges that BP retaliated against Plaintiff because he had filed two previous EEOC complaints.

Plaintiff filed the instant action in the United States District Court for the Southern District of Ohio on December 22, 1997. He filed an amended complaint on May 29, 1998. Plaintiff's amended complaint alleged that, in violation of Title VII, 42 U.S.C. § 1981(a), 42 U.S.C. § 2000(a), and state law, Defendants: (1) engaged in conduct that violated his civil rights under the United States Constitution and federal and state law, (2) engaged in intentional employment discrimination, (3) denied Plaintiff public accommodations as a consumer, (4) engaged in discriminatory employment practices which resulted in serious emotional distress to Plaintiff, (5) published false reports that Plaintiff was harassing fellow employees in violation of his employment duties, and (6) engaged in discriminatory treatment of Plaintiff after he informed BP management of criminal activity by BP supervisory employees.

Defendants filed a motion for summary judgment on each of Plaintiff's claims. Plaintiff filed a memorandum in opposition to the motion for summary judgment supported by his affidavit, the affidavit of fellow employee Angela Shield, and the unsworn letter of Elyse Blakely.

Upon consideration of the motion before it, the district court entered summary judgment in favor of Defendants as to each of Plaintiff's federal claims. The district court declined to exercise supplemental jurisdiction over Plaintiff's state law claims in the event that there was no diversity jurisdiction over the case; in the alternative, the district court held that Plaintiff's state law claims were without merit. The district court dismissed Plaintiff's federal claim for retaliation and discriminatory discharge with prejudice. Plaintiff's claims for race discrimination under Title VII and his state law claims were dismissed without prejudice.

The district court dismissed Plaintiff's Title VII claims against Defendant Bruzina because it concluded that Defendant Bruzina could not be held individually liable under Title VII. The district court dismissed Plaintiff's Title VII retaliation claim against Defendant BP because it determined

Plaintiff's affidavit states that he was disciplined for failing to wear his uniform after filing his second EEOC complaint, while other employees, who likewise were not wearing their uniforms, were not disciplined. Plaintiff's affidavit also states that he was told by Shields and other fellow employees that they (the fellow employees) were instructed to make false claims of theft and harassment against Plaintiff or be terminated.

Plaintiff's first EEOC complaint was filed on February 27, 1996. The second complaint was filed on October 16, 1996. The basis of Plaintiff's second EEOC complaint was the type of conduct described in Shields' affidavit. Plaintiff stated in his EEOC complaint and in his deposition that those occasions on which he was falsely accused of theft and harassment occurred in August and September of 1996. Plaintiff was suspended on January 9, 1997 and terminated on January 24, 1997 after filing the second EEOC complaint.

While it is true that temporal proximity alone is insufficient to establish a causal connection for a retaliation claim, *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000), there are circumstances where temporal proximity considered with other evidence of retaliatory conduct would be sufficient to establish a causal connection. *See, e.g., Moore v. KUKA Welding Sys.*, 171 F.3d 1073 (6th Cir. 1999); *Harrison v. Metro. Gov't of Nashville & Davidson County, Tenn.*, 80 F.3d 1107 (6th Cir. 1996). This case presents just such a circumstance where the temporal proximity considered with other evidence of retaliatory conduct is sufficient to create a genuine issue of material fact as to the existence of a causal connection between Plaintiff's filing of the two EEOC complaints and his suspension and termination as well as other alleged retaliatory conduct.

*Harrison* is instructive on this issue. In that case, the plaintiff had won one lawsuit against the employer, had filed four charges of discrimination with the EEOC, and had written a memorandum complaining of his harassment to the harassing supervisor and the department head. *Harrison*, 80

that Plaintiff had failed to establish a causal connection between his alleged protected activity and the adverse employment action he suffered. Finally, the district court dismissed Plaintiff's Title VII race discrimination claim because the district court determined that Plaintiff had not exhausted his administrative remedies.

Plaintiff filed a timely notice of appeal on January 21, 2000.

On appeal, Plaintiff does not challenge the district court's determination that it did not have jurisdiction over Plaintiff's race discrimination claim because he failed to exhaust his administrative remedies. In addition, Plaintiff does not allege that the district court erred in either declining to exercise supplemental jurisdiction over his state law claims or its conclusion that those claims were without merit. Plaintiff has therefore waived any challenge to the district court's decision as to these issues; errors concerning these claims are thus not properly before the Court. *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 881 (6th Cir. 1996); *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 153 (6th Cir. 1996).

### STANDARD OF REVIEW

We review *de novo* the district court's order granting summary judgment to Defendants. *Johnson v. Econ. Dev. Corp.*, 241 F.3d 501, 509 (6th Cir. 2001). A grant of summary judgment will be upheld only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). If the moving party meets its burden of production, the non-moving party must produce more than a mere scintilla of evidence to survive summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In this case, Plaintiff must produce evidence from which the jury could reasonably find for him. *Id.*

protected activity and the adverse employment action. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

The district court concluded and Defendant BP concedes that Plaintiff met the first three elements of a *prima facie* case of retaliation. The question before this Court is whether Plaintiff presented sufficient evidence to create a genuine issue of material fact as to the existence of a causal connection between Plaintiff's filing of the two previous EEOC complaints and his suspension and termination.

To support his claim, Plaintiff presented his affidavit and the affidavit of Angela Shields, a fellow employee.[3] Shield's affidavit provided that she was "present during conversations where the supervisory personnel of the Defendant BP directed me and several of my fellow employees to make false accusations and complaints against Robert Little so that BP could use the same as justification for terminating Robert Little from employment." (J.A. at 173-74.) Shields and other employees were told that "if we did not make the claims and allegations against Robert Little we would be fired or 'let go' from our employment positions." (J.A. at 174.) Shields and other employees therefore "did lie on and make false claims of harassment and theft against Robert Little." (J.A. at 174.)

---

[3]Plaintiff also submitted a letter from another former employee, Elyse Blakely, who substantiated Plaintiff's claim that BP management urged other employees to file false charges against Plaintiff. The district court disregarded this letter, however, because it was an unsworn statement. Plaintiff now argues that the district court erred in so doing. We, however, conclude that the district court properly disregarded the letter of Elyse Blakely. *See Pollock v. Pollock*, 154 F.3d 601, 611 n.20 (6th Cir. 1998) (citing *Doe v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991) ("a court may not consider unsworn statements when ruling on a motion for summary judgment")). Moreover, the letter did not qualify for the statutory exception to this rule under 28 U.S.C. § 1746. Blakely's letter was not given under the penalty of perjury, certified as true and correct, dated and signed.

## ANALYSIS

Plaintiff argues on appeal that the district court erred in two respects. First, Plaintiff contends, the district court erred in concluding that Defendant Bruzina could not be held individually liable for a violation of Title VII. Second, Plaintiff argues, the district court erroneously concluded that he had not presented sufficient evidence to establish a causal connection between his protected activity--the filing of the two previous EEOC complaints--and the adverse employment action he suffered--suspension and termination.

Consistent with the clear precedent of this Circuit, we uphold the district court's conclusion that Defendant Bruzina cannot be held liable under Title VII. We, however, reverse the district court's grant of summary judgment to Defendant BP on Plaintiff's retaliation claim. A review of the record indicates that Plaintiff produced sufficient evidence to create a genuine issue of material fact as to whether there was a causal connection between his filing of two EEOC complaints and his suspension and termination.

### I.

We first address Plaintiff's Title VII retaliation claim against Defendant Bruzina. We conclude that Plaintiff's claim under Title VII cannot lie because Bruzina was not Plaintiff's employer within the meaning of Title VII.

The law in this Circuit is clear that a supervisor who does not otherwise qualify as an employer cannot be held personally or individually liable under Title VII. *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Since Bruzina was merely Plaintiff's supervisor and not his employer, Bruzina cannot be held individually liable under Title VII.[2]

---

[2]While the law is clear that a supervisor cannot be held liable in his or her individual capacity for violations of Title VII, there is support for the proposition that a supervisor may be held liable in his or her official

Plaintiff argues that this Court should follow *Genaro v. Central Transport, Inc.*, 703 N.E.2d 782, 785 (Ohio 1999). The court in *Genaro* held that a supervisor or manager may be held jointly and/or severally liable with his or her employer for the discriminatory conduct of the supervisor or manager. *Id.* However, the state statute at issue in that case expressly defined employer as "any person employing four or more persons within the state, and *any person acting directly or indirectly in the interest of an employer.*" *Id.* at 788 (citation and internal quotation marks omitted) (emphasis in original). As the *Genaro* court acknowledged, Title VII does not contain such language and therefore does not lend itself to the interpretation Plaintiff urges this Court to adopt. Moreover, we are bound by Sixth Circuit precedent unless it is overruled by either our court sitting *en banc* or the Supreme Court. *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 460 (6th Cir. 1998).

### II.

Plaintiff also argues that his Title VII retaliation claim against Defendant BP should have survived summary judgment. We agree. The record reveals that Plaintiff presented sufficient evidence to create a genuine issue of material fact as to each of the elements of a *prima facie* retaliation claim.

To establish a *prima facie* case of retaliation, the plaintiff must show that (1) he engaged in activity protected under Title VII; (2) the exercise of the protected right was known to the employer; (3) the plaintiff suffered adverse employment action; and (4) there is a causal connection between the

---

capacity upon a showing that he or she could be considered the "alter ego" of the employer. This Court has not clearly and definitively ruled on this issue and we need not do so today. Under the standards set forth in other circuits that allow supervisors to be sued in their official capacity, Plaintiff has failed to make a showing that Bruzina had significant control over Plaintiff's hiring, firing and working conditions such that he could be considered the "alter ego" of BP. *See, e.g., Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993).