NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0029n.06
Filed: October 14, 2004

No. 03-1680

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TRUSTEES OF THE PAINTERS UNION DEPOSIT FUND, | ) ) ) | |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| YBARRA CONSTRUCTION COMPANY and ANN M. YBARRA, individually, jointly and severally, | ) ) ) ) | |
| Defendants-Appellants. | ) ) | |

Before: MARTIN, COLE, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiffs-appellees, trustees of the Painters

Union Deposit Fund, commenced this action against Ybarra Construction and Ann Ybarra on March

27, 2002, seeking access to defendants-appellants' books and records and a judgment for any

delinquent contributions discovered in an audit of those records. After deposing Ybarra and the

fund's auditor, appellees moved for summary judgment, pointing out that appellants conceded that

Ybarra Construction was required to make fringe benefit contributions to the fund on behalf of

employees performing work covered by a collective bargaining agreement. The district court

granted summary judgment, which the appellants now challenge, arguing that there is a genuine

1

issue of material fact regarding the amount of contributions owed. We conclude that appellants have presented no genuine issue of material fact and therefore affirm the judgment of the district court.

**I.**

The defendants-appellants, Ybarra Construction Company and Ann Ybarra, entered into a collective bargaining agreement with Painters District Council No. 22, a trade union, in March 2000. Ybarra also signed the agreement as personal guarantor for wages and other payments required by the agreement. The agreement was in effect during the period of March 14, 2000, through May 31, 2003. The plaintiffs-appellees are the trustees of the Painters Union Deposit Fund, a collection fund which centralizes the payments required of employers for various benefits for employees covered by the agreement. Essentially, the trustees are responsible for collecting fringe benefit contributions from contributing employers, including appellants, and for allocating those contributions between funds that provide health, pension, vacation and other benefits to eligible employees.

The agreement specified commercial and residential rates of wages and fringe benefit contributions that were to be paid for each hour worked by covered employees.[1] The agreement required signatory employers to submit periodic reports to the trustees regarding covered employees' hours of work and the corresponding fringe benefit contributions. The agreement also provided that

---

[1]For the initial year of the agreement, the commercial hourly wage rate was $21.43, and the commercial hourly fringe benefit rate was $8.12. The residential rates were $18.05 for hourly wages and $8.07 for hourly fringe benefit contributions. In subsequent contract years, allocations of negotiated compensation increases between wages and fringe benefits were left to the contracting parties, although the relative differentials between "residential" and "commercial" wage and benefit contribution rates were maintained.

the trustees of the fund were entitled to conduct an audit of Ybarra Construction's books and records.

In September 2001, the fund's auditor attempted to schedule an audit of Ybarra Construction's books and records, but the audit was not performed until fall 2002.[2] On March 27, 2002, the plaintiffs-appellees commenced this action seeking access to appellants' records and judgment for any delinquent contributions ascertained by the audit. In his September 24, 2002, debit memo, the auditor concluded that Ybarra Construction owed $237,452.00 in delinquent contributions and $47,490.40 in liquidated damages (20% of the delinquent contributions as provided for in the agreement). The auditor discovered numerous payments for work covered by the agreement that had not been reported to the fund in Ybarra Construction's monthly contribution reports. The auditor divided the unreported payments by the commercial hourly rate and multiplied the result by the commercial fringe benefit contribution rate. There was no indication in the records that the payments were for residential as opposed to commercial work.

Ybarra was deposed on November 4, 2002. She objected to the audit but did not produce documents to substantiate her objections. Ybarra was given additional time to produce documents supporting her objections to the audit. The fund's auditor was present at the deposition and revised

---

[2]In his deposition, the auditor testified that he sent four written letters, from September 2001 to December 2001, to Ybarra seeking compliance with the audit request. He then attempted to schedule the audit by calling Ybarra on the telephone. An audit was scheduled for January 18, 2002, but when the auditor arrived at the office, he received a message that she would be unable to keep the appointment. The initial audit took place on or around February 13, 2002, but the records provided were incomplete. Additional records were provided by Ybarra Construction's accountant on August 30, 2002.

his conclusions after receiving additional records from Ybarra.[3]    The deposition resumed on November 26, 2002.

Ybarra objected to several aspects of the audit results. She claimed the amount of unpaid contributions should have been calculated at the rate of $.03 per square foot of work performed. She objected to the inclusion of payments to "Professional Drywall," a supplier, as work covered by the agreement.[4] She claimed that fringe benefit payments did not need to be paid on behalf of employees Pat Steele and Peter Zeipekis, because they were supervisors,[5] she disputed that fringe benefit contributions should have been paid on behalf of employees Brian Warner, Tony Torres, and Jerry Slater, because they were either members of the carpenters union or were not performing covered work.[6] She also disputed the auditor's total number of hours, stating that the number he arrived at was different from the number in her records.

---

[3]Specifically, the auditor initially included individuals who were part of the carpenters union, not the painters union, and a supplier. Deleting those amounts reduced the total owed by approximately $20,500.

[4]The audit was revised in response to this objection.

[5]The collective bargaining agreement defined employee to "include all journeymen, foremen, or any employee who acts in the capacity of foreman, supervising the men directly on the job and apprentices as hereinafter set forth." Ybarra admitted that she had previously paid contributions for Steele and Zeipekis because she did not have a company insurance policy. Both men also had union dues deducted from their paychecks.

[6]Where documents supported her claims, the audit was also revised based on Ybarra's claim that certain individuals were not members of the painters union. There was no documentation, however, that any of the individuals listed above were members of the carpenters union, and there was therefore no change made to the audit where they were concerned.

Following the depositions of Ybarra and the fund's auditor, the appellees filed a motion for summary judgment. Ybarra Construction admitted that the company was a party to the agreement and that the agreement was in effect during the period covered by the audit. The company further admitted that Ybarra signed the collective bargaining agreement in her capacity as an officer of Ybarra Construction and as a personal guarantor of Ybarra Construction's wage and fringe benefit obligations. Ybarra Construction acknowledged that members of the Painters Union were employed during the period covered by the audit and that those employees performed work for Ybarra Construction covered by the agreement. Finally, Ybarra Construction concedes that it was obligated to make contributions to the fund as specified by the agreement and that the trustees were authorized to conduct an audit to determine if fringe benefit contributions were being paid correctly. Ybarra Construction's response to the trustees' motion for summary judgment included an unsworn declaration signed by Ybarra reiterating that the audit erroneously included management personnel, carpenters, and laborers, and that commercial rates were used for all computations in the audit even though the majority of the work was residential in nature.

The district court granted the plaintiffs' motion for summary judgment on April 29, 2003, and awarded twenty percent liquidated damages as stipulated in the agreement.[7] Ybarra Construction appeals from the judgment of the district court.

## II.

---

[7]Appellants do not contest the award of liquidated damages in their brief. During the hearing on the summary judgment motion, when the judge asked for his response to plaintiffs' liquidated damages argument, appellants' counsel stated: "The contract in ERISA calls for liquidated damages. I don't know what else I can say." We therefore do not address the liquidated damages issue.

A district court's grant of summary judgment is reviewed *de novo*. *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the moving party establishes an absence of evidence in support of the nonmoving party's case, the "nonmoving party must present affirmative evidence to defeat [the] properly supported motion for summary judgment." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004) (quoting *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)). To sustain this burden, "the adverse party cannot rest solely on the allegations made in her pleadings. Rather, she must set forth by affidavits or otherwise specific facts showing that there is a genuine issue for trial." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (stating that the nonmoving party is required to go beyond the pleadings to designate "specific facts showing that there is a genuine issue for trial" (quoting Fed. R. Civ. P. 56(e))). "In other words, the movant [can] challenge the opposing party to 'put up or shut up' on a critical issue." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).

The Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq*., mandates that a contributing employer make contributions to an employee welfare benefit plan in accordance with the terms of the plans to which it is bound. *Id.* § 1145. Trustees of such plans may seek judicial

6

enforcement of their terms as third party beneficiaries of the collective bargaining agreements. *Id.* § 1132(a). Appellants are bound by an agreement which defines their obligation to contribute to the fund in this case. The audit conducted by the appellees established that from the period March 14, 2000, through July 31, 2002, Ybarra Construction employees worked hours for which appellants owe contributions to the fund.

ERISA requires that "every employer shall . . . maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." *Id.* § 1059(a)(1). The agreement between Ybarra Construction and the Painters' Union also required that the company provide the fund's auditor with access to all books. An employer may not escape liability for benefits due under labor agreements by failing to keep records as required by statute. *See Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 695 (6th Cir. 1994) (stating that "Section 1059 imposes a clear duty on the employer to maintain adequate records"). If an employer fails to keep adequate records, ERISA shifts the burden to the employer to produce evidence of the amount of work performed and to rebut reasonable inferences that can be drawn from the plaintiff's evidence. *Id.* at 696.

The audit findings in this case were based on records provided to the fund by Ybarra Construction. The company did not come forward with additional records to substantiate its arguments that benefits for many of the hours at issue should have been calculated using the residential rate,[8] that certain employees should not have been included in the computation, or that

---

[8]Appellees point out that if appellants ultimately won on this issue, the appellants would owe the fund more money than in the original award. The appellees' brief stated that the "difference

the total number of hours was too high. The results of the audit should be presumed accurate, since no contradictory evidence was produced by Ybarra Construction. *See id.* at 697 (holding employer liable for all hours worked during the period at issue where employer failed to keep adequate records making it "impossible to determine with any precision the amount of contributions" owed).

The appellants have admitted liability but disagree with the auditor's calculation of damages. The appellants rely entirely on Ybarra's deposition testimony and unsworn statement to argue that genuine issues of material fact exist. The evidence submitted by Ybarra Construction is insufficient to raise a triable issue of fact, because the non-moving party is required to "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street*, 886 F.2d at 1477 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). Ybarra's statement appears to be unsworn and as such should not have been considered in ruling on the summary judgment motion. *See Little*, 265 F.3d at 363 n.3 (concluding that an unsworn letter was properly disregarded by the district court in ruling on a summary judgment motion); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991) ("[A] court may not consider unsworn statements when ruling on a motion for summary judgment.").

Ybarra Construction's argument that summary judgment was improperly granted relies heavily on *Illinois Conference of Teamsters & Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1367 (7th Cir. 1995), which held that the affidavit and deposition testimony of the

---

between 'residential' and 'commercial' rates is vastly greater than the difference between 'residential' and 'commercial' fringe benefit contribution rates." Therefore, recalculation would result in a larger award, where the total dollar amount is divided by the wage rate and the quotient is then multiplied by the benefit contribution rate.

owner of a company created a genuine issue of material fact and thus were "sufficient to preclude entry of summary judgment as to the amount of damages." Of course, *Steve Gilbert* is not controlling in the Sixth Circuit. The present case is more properly analogized to *Grimaldi Concrete*, in which the employer was found liable for contributions on "all hours worked during a period in which it has been demonstrated that some covered work was performed." 30 F.3d at 697.

At least one district court in the Sixth Circuit has considered *Grimaldi Concrete* and *Steve Gilbert* as they relate to an action to recover unpaid contributions to an employee benefit plan. *See Mich. Laborers' Health Care Fund v. Taddie Constr., Inc.*, 119 F. Supp. 2d 698 (E.D. Mich. 2000). In *Taddie Construction*, the defendants "adduced no evidence that they had maintained records" as to time spent on work covered by the agreement. *Id.* at 703. In that case, the district court held that *Steve Gilbert* was inapplicable because the "nonmoving party [in *Steve Gilbert*] had produced some evidence as to the amount of work for which contributions were owed." *Id.* at 704. Because the defendants in *Taddie Construction* did not disprove the plaintiffs' calculations, they owed contributions on all hours worked by laborers, whether covered by the agreement or not. *Id.*

In a manner similar to Grimaldi Concrete's failure to "set forth the hours worked on covered projects . . . [or] specify which laborers were working on those projects," Ybarra Construction failed to set forth the hours worked on residential jobs or establish that certain individuals were not covered by the agreement. *Grimaldi Concrete*, 30 F.3d at 696. Just as in *Grimaldi Concrete*, Ybarra Construction failed to keep adequate records as required by 29 U.S.C. § 1059(a)(1). Consequently, it is "impossible to determine with any precision the amount of contributions due" to the fund. *Grimaldi Concrete*, 30 F.3d at 697. Ybarra Construction failed to provide evidence that any of the

9

unreported payments related to residential work, that any individuals were incorrectly included in the calculation, or that the amount of total hours was excessive. Without such documentation, the appellants failed to raise a genuine issue of material fact, and summary judgment was properly granted.

## III.

We affirm the district court's grant of summary judgment.