(December 17, 2002)

■ FIRST CAPITAL ASSET MANAGEMENT, INC., Respondent, v N.A. PARTNERS, L.P., et al., Respondents, and SOHRAB VAHABZADEH, Appellant. [755 NYS2d 63] —Judgment, Supreme Court, New York County (Herman Cahn, J.), entered October 10, 2001, awarding petitioner-respondent $8,276,308.77 as against respondent-appellant, and bringing up for review an order of the same court and Justice, entered June 27, 2001, which denied respondent-appellant's motion for summary judgment seeking dismissal of this CPLR article 52 proceeding, and granted petitioner-respondent's cross motion for partial sum-

mary judgment on its sixth cause of action seeking to hold respondent-appellant liable for a prior judgment against respondent North American Consortium, Inc., unanimously reversed, on the law, without costs, the judgment vacated and the cross motion denied.

This CPLR article 52 enforcement proceeding arises out of a prior action by petitioner-respondent First Capital Asset Management, Inc. (First Capital) against respondents N.A. Partners, L.P. (NAP), North American Consortium, Inc. (NACI), Sohrab Vahabzadeh (Vahabzadeh), the owner/principal of NAP and NACI, and others. In the prior action, First Capital alleged the breach of a stock purchase agreement which called for First Capital to sell 35% of the stock of a subsidiary to be formed to NAP/NACI for a purchase price of $4.5 million. It is undisputed that despite warranting in the stock purchase agreement that " [t]he Buyer has funds, or financing agreements to provide funds, sufficient to pay the Purchase Price at the closing," NAP/NACI failed to close on the transaction.

In May 1997, First Capital obtained a judgment in the amount of $4.5 million, plus interest and costs, against NACI and NAP in the prior action. However, in a February 27, 1997 order giving rise to said judgment, the IAS court also dismissed the complaint against Vahabzadeh individually. The court found that Vahabzadeh was not named as a "buyer" under the purchase agreement and that his signature in his individual capacity pertained only to obligations personal to him, such as a restrictive covenant. In June 1997, the IAS court denied First Capital's motion for reargument and renewal of the February 1997 order, concluding that its "dubious" theories of promoter and alter ego liability should have been raised on the original motion.

In August 2001, this Court reversed the grant of summary judgment to Vahabzadeh in the prior action (*First Capital Asset Mgt. v North Am. Consortium*, 286 AD2d 263), finding the agreement ambiguous as to his personal liability.

Meanwhile, in April 1998, First Capital commenced the instant article 52 proceeding to enforce the May 1997 judgment against Vahabzadeh, NAP, North American Capital Guaranty, Inc. (NACGI), the general partner of NAP, and the Estate of Soleyman Vahabzadeh, Vahabzadeh's father, with whom NACI or NAP purportedly had a financing agreement. In the sixth cause of action of its article 52 petition, First Capital sought to pierce the corporate veil of NACI and NACGI to hold Vahabzadeh personally liable for the May 1997 judgment on both an alter ego theory and under Texas Tax Code

Annotated §§ 171.252 and 171.255, which impose liability on officers and directors for corporate obligations incurred at a time when the corporation's charter has been revoked for nonpayment of Texas franchise taxes.

In an October 30, 1998 judgment, the IAS court dismissed the article 52 petition as against Vahabzadeh on the ground of res judicata, since First Capital failed to raise these grounds when Vahabzadeh's individual liability was litigated in the prior action.* In April 1999, this Court modified to reinstate the petition as against Vahabzadeh insofar as it alleged that he was the alter ego of NACI and NACGI (*First Capital Asset Mgt. v N.A. Partners*, 260 AD2d 179, *lv denied* 93 NY2d 817). We held that the dismissal against Vahabzadeh in the prior action was based on a finding that he was not personally liable under the terms of the stock purchase agreement, and thus did not preclude a proceeding to hold him personally liable under the theory of piercing the corporate veil, since the elements of proof required to sustain recovery under the two theories varied materially (*id.* at 181). Significantly, however, there is no mention in this Court's decision of First Capital's attempt to hold Vahabzadeh personally liable based on the provisions of the Texas Tax Code, and that portion of the petition was not specifically reinstated.

In September 2000, Vahabzadeh moved for dismissal of the reinstated portion of the article 52 petition, arguing that First Capital's veil-piercing theory was deficient as a matter of law. First Capital cross-moved for partial summary judgment on its claim to hold Vahabzadeh personally liable under the Texas Tax Code.

In a June 27, 2001 order giving rise to the judgment appealed from, the IAS court denied Vahabzadeh's motion to dismiss the petition and granted First Capital's cross motion for partial summary judgment. The court first noted that at the time NACI incurred liability under the stock purchase agreement, it had forfeited its franchise for failure to pay Texas corporate taxes, and was not reinstated until after that liability had been fully incurred. The IAS court concluded that under New York law, "the individual shareholders and officers of a corporation are legally responsible for contractual obligations where the contract was entered into after the corporation was dissolved for nonpayment of franchise taxes, even if the

---

* The October 1998 judgment also dismissed First Capital's remaining causes of action for breach of fiduciary duty, fraudulent conveyance and constructive trust. The dismissal of these causes of action was affirmed by this Court on appeal, and is no longer in issue.

corporation was later reinstated," citing *WorldCom, Inc. v Sandoval* (182 Misc 2d 1021 [Sup Ct, NY County 1999]) and *Poritzky v Wachtel* (176 Misc 633 [Sup Ct, Putnam County 1941]). The court further stated that this result is mandated under New York or Texas law.

In addition, the IAS court rejected Vahabzadeh's arguments challenging the merits of First Capital's veil-piercing theory and noted that, in any event, this Court specifically revived the veil-piercing theory in its April 1999 order.

On appeal, Vahabzadeh argues that First Capital's claim that he may be held personally liable under New York or Texas tax law because the debt was incurred while NACI's corporate charter was revoked for nonpayment of franchise taxes is not properly before us, since the entire article 52 proceeding was dismissed in the October 1998 judgment and this Court only reinstated the claim seeking to pierce the corporate veil on an alter ego theory. First Capital's brief does not address this reviewability question, but it does argue that the weight of authority supports the IAS court's determination that individual shareholders and officers may be held liable for debts incurred after a corporation's charter has been revoked for nonpayment of taxes, even if the corporation is later reinstated.

Although First Capital's tax law theory of liability raises important questions concerning the liability of corporate officers for obligations incurred at a time when the corporation's charter has been revoked, which has given rise to a conflict among the courts (*compare Poritzky v Wachtel*, 176 Misc 633 [Sup Ct, Putnam County 1941]; *WorldCom, Inc. v Sandoval*, 182 Misc 2d 1021 [Sup Ct, NY County 1999]; *Annicet Assoc. v Rapid Access Consulting*, 171 Misc 2d 861 [Sup Ct, Rockland County 1997], *with Department 56 v Bloom*, 186 Misc 2d 901 [Sup Ct, Richmond County 2001]; *L-Tec Elecs. Corp. v Cougar Elec. Org., Inc.*, 198 F3d 85 [2d Cir 1999]; *Prentice Corp. v Martin*, 624 F Supp 1114 [ED NY 1986]), we agree with Vahabzadeh that the issue is not properly before us. First Capital initially raised the tax law claim in the sixth cause of action of its article 52 petition, which also contained the claim seeking to pierce NACI's corporate veil to hold Vahabzadeh individually liable. It is undisputed that Justice Shainswit dismissed the entire petition as against Vahabzadeh on the ground of res judicata. In April 1999, this Court modified to reinstate the petition as against Vahabzadeh "insofar as it alleges that judgment debtors [NACI and NACGI] are alter egos of [Vahabzadeh]" (*First Capital Asset Mgt. v N.A. Partners*, 260 AD2d 179, 180), concluding that the dismissal in the prior ac-

tion was based on an entirely different theory of liability against Vahabzadeh.

The IAS court misconstrued this Court's April 1999 modification order. Indeed, it appears to have concluded that our reinstatement of First Capital's alter ego claim also revived the tax law claim—presumably because both claims were included within the sixth cause of action in the petition, and both sought to hold Vahabzadeh individually liable. However, our order made no mention of reinstating the tax law claim, and insofar as the instant record discloses, First Capital never raised such ground on its appeal of the October 1998 judgment. Thus, on the present record, the tax law claim has been dismissed and was never reinstated. Thus, notwithstanding that this Court's rationale in determining that the alter ego theory was not barred by res judicata conceivably could be applied to the tax law claim, since that claim also represented a different theory of liability, First Capital's abandonment of the tax law claim on the prior appeal removes it from any further consideration. Accordingly, the IAS court erred in considering the tax law claim as a basis for granting First Capital's motion for summary judgment, and we reverse that portion of the court's order.

With respect to First Capital's claim seeking to pierce the corporate veil on an alter ego theory, neither party is entitled to summary judgment. Piercing the corporate veil requires a showing that: (1) the owner exercised complete domination over the corporation with respect to the transaction attacked, and (2) that such domination was used to commit a fraud or wrong against the plaintiff, resulting in the plaintiff's injury (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141).

As an alternative ground to affirm the judgment, First Capital argues that it has established its veil-piercing claim as a matter of law. Assuming, without deciding, that First Capital has adequately demonstrated Vahabzadeh's domination of NACI/NACGI to meet the first prong of the test for piercing the corporate veil, "such domination, standing alone, is not enough" (*id.*); some showing of a wrongful act toward First Capital is required to satisfy the test's second prong.

First Capital has failed to demonstrate, as a matter of law, that Vahabzadeh has committed a wrongful act against it. Its primary argument is that Vahabzadeh, through its domination of NACI and NAP, misrepresented that " [t]he Buyer has funds, or financing agreements to provide funds, sufficient to pay the Purchase Price at the Closing," when in fact NACI and NAP

were assetless, and the alleged financing agreements with members of Vahabzadeh's family were actually a sham. However, given the evidence in the record that such a financing agreement did exist, we conclude, as did a Federal District Court in a related action, that a triable issue of fact exists as to whether a misrepresentation occurred so as to justify piercing the corporate veil of NACI/NACGI (*see Oost-Lievense v North Am. Consortium, P.C.*, 969 F Supp 874, 880 [SD NY 1997] [plaintiff's contention that corporate veil should be pierced because of misrepresentations regarding the source of financing creates a factual issue]).

First Capital's arguments that Vahabzadeh deliberately undercapitalized NACI, stripped it of its assets and commingled his personal funds with that of NACI also do not establish a wrongful act as a matter of law. As we have previously stated, "[v]eil-piercing is a fact-laden claim that is not well suited for summary judgment resolution." (*First Bank of Ams. v Motor Car Funding*, 257 AD2d 287, 294.)

For similar reasons, Vahabzadeh's motion for summary judgment was properly denied. Vahabzadeh asserts that because First Capital knew at the time of the agreement that NACI and NACGI had no assets, then it could not have been guilty of any misrepresentation. Nevertheless, Vahabzadeh has not explained why the closing did not occur despite the available financing, nor has he conclusively refuted First Capital's claim that he diverted corporate assets for his own personal use. Thus, the issue of whether the corporate veil may be pierced to hold Vahabzadeh individually liable must await trial of this action. Concur—Williams, P.J., Rosenberger, Rubin, Friedman and Gonzalez, JJ.