DISTRICT COUNCIL NO. 9, Plaintiff,

v.

APC PAINTING, INC., APC Painting, Co., APC Construction Co., Apollo Painting Co., Apollo Construction Co., Apollo Construction Services Corp., and Gregory Fucci, Defendants.

No. 01 Civ.9093 GWG.

United States District Court, S.D. New York.

June 30, 2003.

Howard G. Wien, Koehler & Isaacs, LLP, New York City, for Plaintiff.

Lewis Goldberg, Stuart Weinberger, Goldberg and Weinberger, LLP, New York City, for Defendants.

*OPINION AND ORDER*

GORENSTEIN, United States Magistrate Judge.

Plaintiff, District Council No. 9 ("the Union"), has brought this action under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to enforce arbitration awards rendered pursuant to a collective bargaining agreement. The Union has named as defendants APC Painting, Inc., APC Painting, Co., APC Construction Co. (collectively the "APC entities"); Apollo Painting Co., Apollo Construction Co., Apollo Construction Ser-

vices Corp. (collectively the "Apollo entities"); and Gregory Fucci, who allegedly owns and controls all of these entities. The defendants have moved to dismiss the complaint or for judgment on the pleadings as to Fucci and the Apollo entities. The Union has moved for partial summary judgment to confirm the arbitration awards against the APC entities. The parties have consented to disposition of this action by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, defendants' motion for judgment on the pleadings is denied and plaintiff's motion for partial summary judgment is granted.

## I. BACKGROUND

### A. The Parties

The Union is a "labor organization" within the meaning of 29 U.S.C. § 152(5). The Union represents painters and other tradespeople throughout New York State. See Second Amended Complaint, filed October 29, 2002 (Docket #34) ("Second Amended Complaint"), ¶4; Statement of Material Facts about which Movant District Council No. 9 contends there are no genuine issues, undated ("Pl. 56.1 Statement") (reproduced in Notice of Motion, filed February 28, 2003 (Docket # 43)), ¶1. In 1996, the Union entered into a trade agreement with the Association of Master Painters and Decorators of New York, Inc. ("Association"), governing the working relationship between the Union's members and employers in the New York City area for the years 1996 to 2000. See Second Amended Complaint, ¶¶8, 9.

APC Painting, Inc., is a construction and painting company that does business in the New York City area and is an "employer" within the meaning of 29 U.S.C. § 152(2). Second Amended Complaint, ¶6; Pl. 56.1 Statement, ¶4. APC Painting, Inc., was a signatory to the 1996 agreement between the Union and the Association, see 1996 Agreement Signature Page, dated June 8, 1996 (reproduced in Pl. 56.1 Statement, Ex. B), at 93, and signed a letter agreeing to be bound by a subsequent agreement between the Union and the Association reached in 2000. See Letter to District Council No. 9 from Greg Fucci, dated June 5, 2000 (reproduced in Pl. 56.1 Statement, Ex. C), at 1.

The Union claims that APC Painting, Inc., APC Painting, Co., and APC Construction Co., are actually the same company operating under different names. See Second Amended Complaint, ¶6; Pl. 56.1 Statement, ¶10. The Union also alleges that Fucci owns and operates all of the APC entities. See Pl. 56.1 Statement, ¶12. The defendants dispute both allegations, largely on the ground that some of the entities named do not exist. See Defendants' Rule 56.1 Statement in Opposition to Plaintiff's Motion for Summary Judgment, dated March 17, 2003 ("Def. 56.1 Resp.") (reproduced in Affidavit in Support of Defendants' Motion and in Opposition to Plaintiffs' [sic] Motion for Summary Judgment, filed March 18, 2003 (Docket # 46) ("Fucci Aff.")), ¶¶1, 3.

### B. The Arbitration Procedures

The agreement between the Union and the Association establishes procedures for any disputes that arise between the parties. Specifically, the agreement establishes a Joint Trade Committee ("JTC") to arbitrate all disputes arising under the agreement. See Trade Agreement between District Council No. 9 and the Association of Master Painters and Decorators of New York, Inc., and The Association of Wall, Ceiling, & Carpentry Industries of New York, Inc., and The Window and Plate Glass Dealers Association, effective June 8, 1996 through May 31, 2000, ("Trade Agreement") (reproduced in Pl. 56.1 Statement, Ex. B), Art. XI, Secs. 1, 3.

All grievances are heard by the JTC, with two members selected by the Union and two by the Association. *See id.,* Art. XI, Secs. 1, 3. Additionally, the agreement creates a Joint Trade Board, consisting of the President of the Association and the Business Manager/Secretary–Treasurer of the Union. *See id.,* Art. XI, Sec. 2. If the JTC deadlocks, the Joint Trade Board decides the remaining disputes. *See id.,* Art. XI, Sec. 9. In the event that the Joint Trade Board cannot reach a decision, the matter is submitted for resolution to the American Arbitration Association. *See id.,* Art. XI, Sec. 13.

### C. *The September 7, 2000 Arbitration*

On September 7, 2000, the Union presented a grievance to the JTC, alleging that "APC Construction" had failed to properly pay wages to and fringe benefits on behalf of a member of the Union, Tomasz Oginski. *See* Pl. 56.1 Statement, ¶ 16. The JTC panel found against "A.P.C. Construction" and ordered a "make whole" remedy. *See In the Matter of the Arbitration between A.P.C. Construction and District Council No. 9,* dated September 7, 2000 (reproduced in Pl. 56.1 Statement, Ex. F), at 1. On October 18, 2000, the Union requested a clarification of the meaning of the make whole remedy. *See* Pl. 56.1 Statement, ¶ 21. By letter sent to Fucci, the JTC responded that the remedy was payment of the "difference between the apprentice rate and the journeyman rate." *See* Letter from Alexander E. Gettler to Greg Fucci, President APC Construction, dated October 19, 2000 (reproduced in Pl. 56.1 Statement, Ex. H), at 1.

Subsequently, the Union and the defendants disputed what amount was owed under the September 7, 2000, decision. *See* Pl. 56.1 Statement, ¶ 23. By letter of February 8, 2001, the JTC again clarified its award, stating that APC owed $9,413.50 in wages to Oginski and $4,295.90 to the fringe benefits fund on Oginski's behalf. *See* Letter from Alexander E. Gettler to Greg Fucci, dated February 8, 2001 (reproduced in Pl. 56.1 Statement, Ex. J), at 1. The Union alleges that the defendants are in partial compliance with this award, having paid $5,200 towards Mr. Oginski's wages, but still owe $4,213.50 in wages and $4,295.90 in fringe benefit contributions. *See* Pl. 56.1 Statement, ¶¶ 25, 28.

### D. *The October 2000 Arbitration*

Another arbitration between the Union and "APC Construction" was held on October 18, 2000. *See* Pl. 56.1 Statement, ¶ 29. The Union alleged that the company failed to make proper contributions to the employee fringe benefit trust fund on behalf of three members of the Union—specifically, that the company's contributions on behalf of the three employees had been made at the "market recovery" rate ($6.30 per hour) instead of the "journeyperson" rate ($14.06 per hour). *See* Pl. 56.1 Statement, ¶¶ 30, 33. The JTC found in favor of the Union and ordered "APC" to pay the difference between the two rates. *See In the Matter of the Arbitration between APC and District Council No. 9,* undated (reproduced in Pl. 56.1 Statement, Ex. N), at 1. The award required the company to pay the difference between the two rates ($7.76 per hour) for 56 hours on behalf of two of the employees and 42 hours for the other. *See id.* The total owed under this award amounted to $1,195.04. The Union originally claimed that the defendants have paid nothing to satisfy the October 2000 JTC award. *See* Pl. 56.1 Statement, ¶ 35. In response, the defendants supplied an affidavit from one of the workers at issue, Patrick Somma, stating that the contributions in his name have been made. *See* Affidavit of Patrick Somma, dated March 17, 2003 ("Somma Aff.") (reproduced in Fucci Aff.), ¶ 2. By way of reply, the Union now admits that the defendants have made some payments pursuant to the October

2000 Arbitration, but not all of the required payments. *See* Affidavit of Gregory Vagelatos, dated July 18, 2002 (reproduced in Reply Affirmation, filed April 3, 2003 (Docket # 47) ("Pl. Reply Aff."), Ex. H), ¶ 5.

### E. *The February 2001 Lawsuit*

An arbitration to determine three additional grievances brought by the Union was originally scheduled to occur on January 23, 2001. *See* Letter from Alexander E. Gettler to Lewis Goldberg, dated February 15, 2001 (reproduced in Pl. Reply Aff., Ex. B), at 1–2. The defendants objected to the arbitration proceedings after witnessing all four arbitrators exit the office of the Union's Business Manager and Secretary–Treasurer, Sandy Vagelatos, immediately prior to the hearing. *See* Fucci Aff., ¶ 22. The defendants refused to take part in the arbitration and defendants' counsel twice wrote to the JTC alleging improprieties. *See* Letter from Alexander E. Gettler to Lewis Goldberg, dated February 15, 2001 (reproduced in Pl. Reply Aff., Ex. B), at 1–2. The JTC responded by rescheduling the arbitration for February 22, 2001, and by replacing all four arbitrators from the original panel. *See id.*

On February 20, 2001, "APC Painting Company" filed suit seeking a temporary restraining order to prevent the February 22 arbitration from occurring. *See APC Painting Company v. District Council 9, et al.,* 01 Civ. 1250(BDP) (S.D.N.Y.2001). The defendants argued that the arbitration should be stayed and the court should reform the agreement between the Union and the Association to prevent the Union from selecting arbitrators for JTC panels. *See* Transcript of Hearing before the Honorable Barrington D. Parker, dated February 20, 2001 ("Tr:") (reproduced in Pl. Reply Aff., Ex. C), at 2–17. In a ruling issued from the bench, the district court denied APC's application. *See* Tr. at 36–38. The court found that APC Painting Company had not demonstrated the existence of bias sufficient to grant the emergency remedy requested. Tr. at 37. After the denial of the application for a temporary restraining order, the parties proceeded with the arbitration on February 22, 2001. The parties eventually stipulated to a voluntary dismissal of the court case. *See* Stipulation of Discontinuance, filed May 22, 2001 (reproduced in Pl. 56.1 Statement, Ex. Q).

### F. *The February 22, 2001 Arbitration*

On February 22, 2001, the Union presented three grievances against "APC Const." to the reconstituted panel of the JTC. *See* Pl. 56.1 Statement, ¶ 36. First, it alleged that "APC Const." was employing a non-union member and had failed to register a job at the Extended Stay Hotel in Elmsford, New York with the Union. *See* Joint Trade Committee of the Painting and Decorating Industry Demand for Arbitration Grievance and Complaint, dated October 20, 2000 (reproduced in Pl. 56.1 Statement, Ex. O). The Union also alleged that "APC Const." was employing nine non-union members at a job at a school in Yonkers, New York. *See* Joint Trade Committee of the Painting and Decorating Industry Demand for Arbitration Grievance and Complaint, dated January 12, 2001 (reproduced in Pl. 56.1 Statement, Ex. O). Finally, the Union alleged that "APC Const." had failed to register a job at a school in New Rochelle, New York. *See id.* At this hearing, the arbitrators heard testimony regarding the interrelated nature of the APC and Apollo entities.[1]

---

1. In particular, Fucci gave the following testimony:

THE CHAIRMAN: What is the exact corporate name?
THE WITNESS: Apollo Painting, Inc.

On March 22, 2001, the JTC found in favor of the Union and ordered "APC Painting, Inc." to pay fines totaling $19,750. *See In the Matter of the Arbitration between APC Painting, Inc. and District Council No. 9,* dated March 22, 2001 (reproduced in Pl. 56.1 Statement, Ex. P), at 1–3. The Union alleges that none of the fines ordered by the JTC on March 22, 2001 have been paid. *See* Pl. 56.1 Statement, ¶ 42.

### G. *The June 13, 2001 Arbitration*

On May 10, 2001, the Union presented eight additional grievances against "APC Painting, Inc." to the JTC. *See* Pl. 56.1 Statement, ¶¶ 44–45. In brief, the eight grievances claimed that "APC Painting, Inc." had failed to register a number of jobs with the Union and that the company had employed non-union employees at a number of jobs. *See* Joint Trade Committee of the Painting and Decorating Industry Demand for Arbitration Grievance and Complaint, dated March 23, April 2, April 6, April 11, and May 2, 2001 (reproduced in Pl. 56.1 Statement, Ex. R), at 1–8. In two separate decisions rendered on June 13, 2001, the JTC panel found against "APC Painting" and "APC" on all alleged violations and awarded the Union fines totaling $27,250.[2] *See In the Matter of the Arbitration between APC Painting and District Council No. 9,* dated June 13, 2001 (reproduced in Pl. 56.1 Statement, Ex. S), at 1; *In the Matter of the Arbitration between APC and District Council No. 9,* dated June 13, 2001 (reproduced in Pl. 56.1 Statement, Ex. S), at 1. The Union alleges

that none of the fines issued in the June 13, 2001 JTC awards have been paid. *See* Pl. 56.1 Statement, ¶ 47.

### H. *The Current Proceedings*

The Union filed its original complaint in this action on October 12, 2001 and an amended complaint on November 2, 2001. *See* Amended Complaint, filed November 2, 2001 (Docket # 3). Thereafter, the defendants moved for judgment on the pleadings and summary judgment and the Union moved for summary judgment or, in the alternative, to amend its complaint. At oral argument on the motions, the Court gave the Union leave to file a second amended complaint and denied the remaining motions as moot.

The Union filed its second amended complaint on October 29, 2002. *See* Second Amended Complaint. The second amended complaint added APC Painting, Inc., as a defendant and alleged additional facts regarding Fucci's involvement in the various arbitrations. On January 3, 2003, the defendants moved to dismiss the complaint and for judgment on the pleadings. *See* Notice of Motion to Dismiss and for Judgment on the Pleadings, filed January 3, 2003 (Docket # 38). On January 31, 2003, the Union moved for summary judgment in its favor and opposed the defendants' motion for judgment on the pleadings. *See* Notice of Motion, filed January 31, 2003 (Docket # 40). The Union subsequently withdrew this motion and filed a different version on February 28, 2003.

---

THE CHAIRMAN: A-p-o-l-l-o, Apollo Painting, Inc.
MR. BELL: So APC Construction is not aware of—- is not you?
THE WITNESS: No.
MR. BELL: How about APC Painting?
THE WITNESS: It is known as the same thing, APC Painting.
*See* Transcript of *In the Matter of the Arbitration Between: District Council No. 9. In-*

*ternational Union of Printers and Allied Trades and APC Painting. Inc.,* dated February 22, 2001 (reproduced in Pl. Reply Aff. Ex. E), at 78.

**2.** Although it does not explain the discrepancy, the Union has averred in its motion papers that the amount owed under these awards was $21,250. *See* Pl. 56.1 Statement, ¶ 46.

*See* Notice of Motion, filed February 28, 2003 (Docket # 43).

## II. *STANDARD OF REVIEW*

### A. *Motions to Dismiss or for Judgment on the Pleadings*

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is examined under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.) (citing *Ad–Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987)), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994); *Miner v. Empire Blue Cross/Blue Shield,* 2001 WL 96524, at *2 (S.D.N.Y. Feb. 5, 2001).

A claim may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [the plaintiff] to relief.'" *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 161 (2d Cir.2000) (quoting *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000)). All factual allegations contained in the complaint are accepted as true and all reasonable inferences are drawn in plaintiff's favor. *See Scutti Enters., LLC. v. Park Place Entm't Corp.,* 322 F.3d 211, 214 (2d Cir.2003). A court may consider documents referred to in a complaint, explicitly or by reference, on a motion to dismiss. *See Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001); *Stuto v. Fleishman,* 164 F.3d 820, 826 n. 1 (2d Cir.1999); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

On a motion to dismiss, " '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (quoting *Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir. 1996)) (citation omitted). Nonetheless, the Court is not required to accept as true plaintiff's " 'conclusions of law or unwarranted deductions.'" *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994) (quoting 2A Moore & Lucas, *Moore's Federal Practice,* ¶ 12.08, at 2266–69 (2d ed.1984)) (citation omitted), *cert. denied,* 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995).

### B. *Motions for Summary Judgment*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

"On a motion for summary judgment, all factual inferences must be drawn in favor of the non-moving party." *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003) (citation omitted). To survive a motion for summary judgment, however, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis omitted) (quoting Fed.R.Civ.P. 56(e)). "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998) (citation omitted). Thus, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 452 (2d Cir.1999) (citations omitted), *cert. denied,* 530 U.S. 1242, 120 S.Ct. 2688, 147 L.Ed.2d 960 (2000). In addition, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem. Inc.,* 315 F.3d 171, 175 (2d Cir.2003) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Vann v. City of New York,* 72 F.3d 1040, 1048 (2d Cir.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Thus, a party "moving for summary judgment must prevail if the [non-movant] fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir.1996) (citing *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505).

## III. *DISCUSSION*

The defendants have moved to dismiss the claims against Fucci and the Apollo entities and the Union has moved for summary judgment to confirm the arbitration awards against the APC entities. While ordinarily the Court would decide a motion to dismiss before deciding a motion for summary judgment, here the decision as to whether the arbitration awards should be confirmed has a bearing on whether Fucci and the Apollo entities can remain as defendants. Accordingly, after discussing certain controlling legal principles, the Court will first consider the Union's motion to confirm the arbitration awards and then consider the defendants' motion to dismiss the claims against Fucci and the Apollo entities.

### A. *Confirmation of Arbitration Awards under the Labor Management Relations Act*

Under section 301 of the LMRA, 29 U.S.C. § 185, a district court has jurisdiction to hear a suit for violation of contracts between an employer and a qualifying labor organization. Federal courts apply federal common law as the substantive law for such suits. *See Textile Workers Union of Am. v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Where there has been an arbitration award, a court's review is very limited. *See, e.g., Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) (per curiam); *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338,* 118 F.3d 892, 896 (2d Cir.1997). Specifically, the court is "not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). So long as an arbitration award "draws its essence from the collective bargaining agreement," the court is required to confirm the award. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4

L.Ed.2d 1424 (1960); *see also First Nat'l Supermarkets,* 118 F.3d at 896 (a court should "not reverse an arbitral award that draws its essence from the agreement, even if it contains factual errors or erroneous interpretations of contract provisions") (citing *Misco,* 484 U.S. at 37–38, 108 S.Ct. 364). If the court can infer the reasoning of the arbitrator from the facts of the case, the court should confirm the arbitration award. *See Burns Int'l Security Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am.,* 47 F.3d 14, 17 (2d Cir.1995) (quoting *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1216 (2d Cir.1972)).

B. *Alter Ego Theory*

 When applicable, the alter ego doctrine binds a non-signatory to the terms of a collective bargaining agreement signed by another party. *See Lihli Fashions Corp. v. NLRB,* 80 F.3d 743, 748 (2d Cir.1996) (citing cases). The doctrine focuses on "'the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations.'" *Truck Drivers Local No. 807 v. Regional Imp. & Exp. Trucking Co., Inc.,* 944 F.2d 1037, 1046 (2d Cir.1991) (quoting *Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc.,* 690 F.2d 489, 508 (5th Cir.1982)). The factors applied to determine if a company is an alter ego of another are "'whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.'" *Truck Drivers,* 944 F.2d at 1046 (quoting *Goodman Piping Prods., Inc. v. NLRB,* 741 F.2d 10, 11 (2d Cir.1984)). In addition, it is at least "germane" to the inquiry whether the company has exhibited any anti-union animus. *Goodman Piping,* 741 F.2d at 12 (quoting *NLRB v. Tricor Prods., Inc.,* 636 F.2d 266, 270 (10th Cir.1980)).

In *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.,* 312 F.2d 299 (2d Cir.), *cert. denied,* 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963), the Second Circuit examined the alter ego theory as it applies to motions to confirm commercial arbitration awards. In that case, the court affirmed a decision that refused to confirm an arbitration award against a company that was not a party to a contract containing an arbitration clause. *See id.* at 300–01. The court found that a motion to confirm was not the proper time to pierce the corporate veil or to assert an alter ego theory of liability. *See id.* at 301. *Orion Shipping,* however, was brought in the context of a commercial—not labor—arbitration and thus was examined only under the Federal Arbitration Act, 9 U.S.C. § 9. *See id.* at 300.

The Second Circuit later examined the applicability of *Orion Shipping* in a suit involving a labor arbitration award in *Gvozdenovic v. United Air Lines, Inc.,* 933 F.2d 1100 (2d Cir.), *cert. denied,* 502 U.S. 910, 112 S.Ct. 305, 116 L.Ed.2d 248 (1991). Finding that the plaintiffs were not entitled to vacate an arbitration award, the court stated that *Orion Shipping* was inapplicable in the labor arbitration context. *See Gvozdenovic,* 933 F.2d at 1105 ("[R]eliance on ... *Orion Shipping* is misplaced because [that] case[ ] involved commercial, not labor arbitration.... Unlike a standard commercial contract, a collective bargaining agreement binds both those members within a bargaining unit at the time the agreement is reached as well as those who later enter the unit.") (internal citations omitted).

Other courts have made clear that *Orion Shipping* does not preclude a finding of alter ego on a motion to confirm. *See Int'l Union of Operating Eng'rs, Local 150 v. Centor Contractors, Inc.,* 831 F.2d 1309, 1313 (7th Cir.1987) ("we see no reason ... [the alter ego theory] should not be appli-

cable to enforcement of arbitration awards that are 'part and parcel of the collective bargaining process itself.' ") (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)); *see also Matter of Arbitration between Bowen and 39 Broadway Assocs.*, 1992 WL 73480, at *12 (S.D.N.Y. Apr. 2, 1992) (denying summary judgment on a motion to confirm in order to allow discovery on the existence of an alter ego relationship between two companies); *Freight Drivers, Helpers, Dockmen and Allied Workers Local No. 375 v. Kingsway Transports, Inc.*, 1991 WL 64065, at *4 (W.D.N.Y. Apr. 22, 1991) (denying summary judgment because the alter ego theory could justify confirmation against a non-signatory); *District 15, Int'l Assoc. of Machinists v. Numberall Stamp and Tool Co., Inc.*, 658 F.Supp. 648, 650–51 (S.D.N.Y.1987) (finding "different rules apply" in the labor management area and denying summary judgment to a company claiming *Orion Shipping* precluded confirming an arbitration award under an alter ego theory); *Textile Workers of Am. v. Cast Optics Corp.*, 1971 WL 933, at *11–*13 (D.N.J. Apr. 29, 1971) (confirming award against a successor corporation), *aff'd*, 464 F.2d 577 (3d Cir.1972).

### D. *The Union's Motion for Summary Judgment*

■ The Union has moved for summary judgment to confirm all of the arbitration awards issued by the JTC against the APC entities. As noted, judicial review of arbitration awards rendered pursuant to a collective bargaining agreement is very limited. *See, e.g., Garvey*, 532 U.S. at 509, 121 S.Ct. 1724; *First Nat'l Supermarkets*, 118 F.3d at 896. In sum, the Court should determine only whether the award "draws its essence from the collective bargaining agreement." *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. 1358; *see also Wackenhut Corp. v. Amalgamated Local 515*, 126 F.3d 29, 32 (2d Cir.1997) ("The contractual theory of arbitration ... requires a reviewing court to affirm an award it views as incorrect—even very incorrect—so long as the decision is plausibly grounded in the parties' agreement.").

In this case, it cannot be gainsaid that the arbitration awards were rendered pursuant to the terms of the collective bargaining agreement. It is undisputed that the agreement between the Union and the Association governed the working relations in the painting industry in the tri-state region. This agreement established standards that signatory employers were bound to follow. In addition, the agreement established the arbitral forum where these awards were rendered. The awards at issue concern allegations that APC Painting, Inc.—a signatory to the agreement—had engaged in activities prohibited under the agreement. The JTC's findings of underpayment of wages and fringe benefits, failure to register jobs with the union, and employment of non-union workers are all prohibited activities subject to penalties under the agreement. *See* Trade Agreement, Art. II. Secs. 1(A)–2 (establishing wage and benefit scales); *id.*, Art. VIII. Sec. 1 (requiring employers to register jobs with the Union); *id.*, Art. XII (reserving the Union's right not to have its members work with non-union employees). Because the Court can determine the reasoning of the arbitrators from the awards, the awards must be confirmed. *See Burns Int'l*, 47 F.3d at 17. Moreover, it is obvious that these awards were being issued against the company that signed the collective bargaining agreement—APC Painting, Inc. The arbitrators' failure to use the exact legal name for this entity does not preclude confirmation of the awards.

The defendants' arguments in opposition to the Union's motion for summary judgment are meritless. First, the defendants argue that this Court must deny summary

judgment because the Union has submitted an affidavit of its president, William O'Brien, who also served as an arbitrator on some of the JTC panels. *See* Defendants' Memorandum of Law in Reply to Plaintiffs' [sic] Opposition to Defendants' Motion to Dismiss the Complaint and for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Summary Judgment, filed March 18, 2003 (Docket # 45) ("Def.Mem."), at 22–23. This affidavit, however, was not submitted in O'Brien's capacity as an arbitrator. It does not discuss any internal aspects of the arbitration process or otherwise provide information that would be available only to the arbitrators. Thus, it was not improper for the Union to submit it.

■ The defendants also assert that the awards of September 7 and October 18, 2000 have been satisfied. *See* Def. Mem. at 23–24. But whether these awards have been satisfied—a fact disputed by plaintiff—has no bearing on whether the arbitration awards should be confirmed. *See Hotel Employees & Rest. Employees, Dist. 1115 v. Sidjay of New Jersey,* 1993 WL 645982, at *4 n. 3 (D.N.J. Aug. 25, 1993) (confirming an arbitration award with the expectation that the employer would be credited for any amount already paid). Indeed, as the defendants themselves have pointed out subsequent to the briefing, a court may confirm an arbitration award against a party even when the party has complied with that award. *See Ottley v. Schwartzberg,* 819 F.2d 373, 376–77 (2d Cir.1987); *see also Am. Nursing Home v. Local 144,* 1992 WL 47553, at *2 (S.D.N.Y. Mar. 4, 1992) ("The issues of compliance and confirmation are distinct from each other. A court may confirm an arbitration award even in the absence of a showing of non-compliance.") (citation omitted). Thus, the issue of payment is relevant only as a defense to the imposition of a judgment against the defendants.

■ The defendants also appear to argue that the arbitrations were tainted because one arbitration panel was seen leaving the office of the head of the Union prior to an arbitration. *See* Def. Mem. at 7–8. Any attempt by defendants to challenge these awards directly based on allegations of impropriety should have been made as a motion to vacate the awards within 90 days of the date of the award or when a panel refused to reconsider the award. *See Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel,* 145 F.3d 85, 88–89 (2d Cir.1998); *accord Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261,* 912 F.2d 608, 612 (2d Cir.1990). As the defendants failed to seek timely vacatur of the awards on this ground, it may not be asserted as a defense to a subsequent motion to confirm. *See Local 802,* 145 F.3d at 89.

Finally, the defendants contend that APC Construction "does not exist" and, thus, no award can be confirmed against it. Def. Mem. at 24. But at least one of the arbitrations proceeded against this entity. In addition, the defendants' attorney filed an answer in this lawsuit on behalf of this entity, *see* Answer, filed March 1, 2002 (Docket # 12), leaving it in the peculiar position of denying its own existence. In any event, if APC Construction does not exist, it would have no standing to complain that an award is confirmed against it. If it does exist, the plaintiff is entitled to an award against it as the defendants' papers do not contest that this entity qualifies as an alter ego of APC Painting, Inc.[3]

---

3. The defendants also contend that Oginski, the subject of the September 7, 2000 arbitration, is an illegal alien and cannot recover unpaid wages. *See* Def. Mem. at 23 (citing *Hoffman Plastic Compounds, Inc. v. NLRB,* 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002)). The defendants do not provide

**240**

Accordingly, the Union's motion for summary judgment is granted and the arbitration awards rendered by the JTC are confirmed as against the APC entities.

### E. The Defendants' Motion to Dismiss or for Judgment on the Pleadings

#### 1. Gregory Fucci

■ The defendants seek to dismiss Gregory Fucci as a defendant on the ground that the arbitration awards cannot be confirmed against Fucci individually and thus no judgment may be entered against him. The defendants' argument is correct up to a point. Case law makes clear that a court cannot confirm an arbitration award against a party who did not participate in the arbitration. *See, e.g., Ali A. Tamini v. M/V Jewon,* 808 F.2d 978, 981 (2d Cir.1987) ("[Appellees] were not parties to ... the arbitration proceedings and were not bound by the award.") (citations omitted); *Am. Renaissance Lines, Inc. v. Saxis S.S. Co.,* 502 F.2d 674, 677 (2d Cir.1974) ("Arbitrators do not have the power to bind a [party] which [was] not ... a voluntary participant in the arbitration proceeding.") (citing *Orion Shipping,* 312 F.2d at 299); *Kelley v. Workmen's Circle Home and Infirmary Found. for the Aged, New York Branches, Inc.,* 1993 WL 248792, at *4 (S.D.N.Y.1993) (finding an arbitration award could not be enforced against a party who had not participated in the arbitration); *Bowen,* 1992 WL 73480, at *4 ("It has long been clear that an arbitration award cannot be enforced against a non-party to the arbitration clause who did not voluntarily participate in the arbitration.") (citations omitted). While Fucci was present at the arbitrations, there is no basis for concluding that

his appearances were in a personal capacity.

In addition, case law is clear that in the commercial arbitration context the corporate veil cannot be pierced as part of a motion to confirm the arbitration award. *See, e.g., Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.,* 23 F.3d 41, 46–47 (2d Cir.1994); *Orion Shipping,* 312 F.2d at 301; *In re Arbitration between Promotora de Navegacion S.A.,* 131 F.Supp.2d 412, 422 (S.D.N.Y.2000). Such case law is premised on the concept that a decision to pierce the corporate veil requires a detailed factual examination that is inappropriate on a motion to confirm. The same principle operates in the labor arbitration context. *See Int'l Broth. of Elec. Workers, Local Union No. 332 v. Hyland Wilson Elec. Contractors, Inc.,* 881 F.2d 820, 821 (9th Cir.1989).

■ Nonetheless, while a motion to confirm is not the proper mechanism for piercing the corporate veil, veil-piercing may be available *after* a union "establish[es] their right to a money judgment against [the corporate entities]." *UA Local No. 343 of the United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Indus. v. Nor–Cal Plumbing, Inc.,* 48 F.3d 1465, 1476 (9th Cir.1994) (citation omitted), *cert. denied,* 516 U.S. 912, 116 S.Ct. 297, 133 L.Ed.2d 203 (1995). Thus, after confirmation of an arbitration award, courts have proceeded to examine whether that award could be enforced against an individual shareholder. *See Directors Guild of Am., Inc. v. Garrison Prods, Inc.,* 733 F.Supp. 755, 762 (S.D.N.Y. 1990) (piercing the corporate veil to enforce a previously entered judgment confirming an arbitration award); *Plumbers'*

proper factual support for this proposition as the statement that he is an illegal alien is made explicitly "on information and belief," Fucci Aff., ¶ 41, rather than on personal

knowledge as required by Fed. R. Civ. p. 56(e). Thus the Court need not reach the question of whether public policy would bar confirmation of the award as to Oginski.

*Pension Fund, Local 130, U.A. v. A–Best Plumbing & Sewer, Inc.*, 1992 WL 59098, at *7 (N.D.Ill. Mar. 16, 1992) (same); *see also Overseas Private Inv. Corp. v. Marine Shipping Corp.*, 2002 WL 31106349, at *3 (S.D.N.Y. Sept. 19, 2002) (allowing a cause of action to continue against a private individual after confirming an arbitration against a corporate entity). Thus, while this Court may not confirm an award against Fucci, entry of judgment against him in the future may be appropriate upon a proper factual showing.

 The next question that must be answered is whether the plaintiff has alleged facts in the Second Amended Complaint that would support piercing the corporate veil. Courts have utilized state law standards for piercing the corporate veil after confirmation of a labor arbitration award. *See, e.g., Directors Guild*, 733 F.Supp. at 759–60 (New York law); *Plumbers Pension Fund*, 1992 WL 59098, at *3 (Illinois law). Under New York law, "[g]enerally ... piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993) (citing cases); *accord First Capital Asset Mgm't, Inc. v. N.A. Partners, L.P.*, 300 A.D.2d 112, 116, 755 N.Y.S.2d 63 (1st Dep't 2002) (citation omitted). As for the first element, the Union has alleged that Fucci owns and controls the APC entities. *See* Second Amended Complaint, ¶ 51. With respect to the second element, the Union has alleged that Fucci exercised such control to wrongfully avoid obligations rendered under the arbitration awards and that he did so by dissolving one of the Apollo entities shortly after the final award was issued. *See id.*, ¶ 88. If the Union proves complete domination by Fucci, a breach of the collective bargaining agreement could suffice to meet the "fraud or wrong" requirement. *See Directors Guild*, 733 F.Supp. at 762 (piercing corporate veil to hold individual liable for award confirmed against corporation under the LMRA); *see also Michigan Laborers' Health Care Fund v. Taddie Const., Inc.*, 119 F.Supp.2d 698, 703 (E.D.Mich.2000) (use of "the corporate form ... to improperly fail to pay fringe benefits" satisfies the element of "wrong") (interpreting Michigan law). The Union's allegations, although slim, suffice to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief'") (quoting Fed.R.Civ.P. 8(a)(2)).

 The defendants argue that the Union has failed to meet the pleading requirements of Fed.R.Civ.P. 9(b) to plead fraud with particularity. *See* Def. Mem. at 16. "Whether Fed.R.Civ.P. 9(b) applies to veil-piercing claims has been characterized as a 'knotty question.'" *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F.Supp.2d 198, 222–23 (S.D.N.Y.2002) (quoting *Farley v. Davis*, 1992 WL 110753, at *6 (S.D.N.Y. May 8, 1992)). A "veil-piercing claim [that] rests on allegations of fraud" is required to satisfy the requirements of Rule 9(b). *Id.* (citing cases). However, "Rule 9(b) does not come into play where fraud is not" the basis of a claim for piercing the corporate veil. *Network Enters., Inc. v. APBA Offshore Prods., Inc.*, 2002 WL 31050846, at *5 (S.D.N.Y. Sept. 12, 2002). Here, the Union alleges that Fucci has used his

companies in an attempt to avoid the obligations that were imposed by the arbitration awards. *See* Second Amended Complaint, ¶ 88. This is an allegation of breach of the collective bargaining agreement, not fraud. *See Marcella v. ARP Films, Inc.*, 778 F.2d 112, 119 (2d Cir. 1985) ("failure to perform promised acts is a breach of contract, not fraud") (citation omitted).

While the Union does allege that Fucci dissolved one of his companies "with an intent to defraud" the Union, Second Amended Complaint, ¶ 88, this allegation is not necessary for the Union to make out its claim that the corporate veil should be pierced. "Because it is not necessary to allege fraud in order to pierce the corporate veil," *Alter v. Bogoricin*, 1997 WL 691332, at *5 (S.D.N.Y. Nov. 6, 1997), "it is not 'beyond doubt' that [the Union] 'can prove no set of facts which would entitle [it] to relief.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 156 (2d Cir.2002) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000)). Thus, the Union's allegations are sufficient to allege a non-fraud based reason for piercing the corporate veil.

### 2. *The Apollo Entities*

Defendants also contend that they are entitled to judgment on the pleadings for Apollo Painting Co., Apollo Construction Co., and Apollo Construction Services Corp. *See* Def. Mem at 9–12. The defendants argue that because these entities were not named in the arbitration awards, the awards cannot be confirmed against them. However, as discussed in Section III.B above, the alter ego theory of liability is available on a motion to confirm to bind non-signatories to collective bargaining obligations and the plaintiffs. *See, e.g., Centor Contractors, Inc.*, 831 F.2d at 1313; *Bowen*, 1992 WL 73480, at *11–12; *Kings-*

*way Transports*, 1991 WL 64065, at *4; *Numberall Stamp*, 658 F.Supp. at 650; *Cast Optics*, 1971 WL 933, at *11–13. While the Union has not yet moved to confirm the awards against the Apollo entities, it has alleged that APC Painting, Inc. has operated under the name of the various Apollo entities at various times. Second Amended Complaint, ¶ 6. The Union has also alleged that the Apollo entities conduct the same business, utilize the same address, service the same customers and are all owned and operated by the same person, Fucci. *See id.*, ¶¶ 50–60, 62–71, 83, 87. Finally, the Union alleged that Fucci himself acknowledged during one of the arbitrations that Apollo Painting was the same as APC Painting. *See id.*, ¶¶ 76–77. These facts, if proven, would be sufficient to establish a theory of alter ego liability and to permit confirmation of the arbitration awards against the Apollo entities. Therefore, the defendants' motion for judgment on the pleadings as to the Apollo entities is denied.

### Conclusion

For the foregoing reasons, defendants' motion for judgment on the pleadings is denied. Plaintiff's motion for summary judgment is granted. The Court confirms the JTC arbitration awards against the APC entities.