NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0706n.06

No. 08-1617

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Oct 29, 2009**
LEONARD GREEN, Clerk

STEVEN S. HUBBARD and KATHLEEN
HUBBARD,

   *Plaintiffs-Appellees*,

    v.

GEOSTAR FINANCIAL SERVICES
CORPORATION, a Delaware Corporation,

   *Defendant-Appellant*.

)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

**O P I N I O N**

BEFORE: MOORE and WHITE, Circuit Judges; and OLIVER, District Judge.[*]

  **SOLOMON OLIVER, JR., District Judge.** Defendant/Appellant GeoStar Financial

Services Corporation ("GeoStar" or "Defendant") appeals the following orders of the district court:

(1) the April 17, 2007 order denying Plaintiffs/Appellees Steven S. and Kathleen Hubbard

(collectively, the "Hubbards" or "Plaintiffs") Motion for Summary Judgment on the Hubbards'

breach of contract claim; (2) the January 18, 2008 supplemental order granting the Hubbards' Motion

for Summary Judgment on the breach of contract claim; and (3) the February 11, 2008 order denying

GeoStar's Motion for Reconsideration of the supplemental order.[1] In accordance with the district

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern
District of Ohio, sitting by designation.

[1] The Hubbards do not appeal the portion of the district court April 17, 2007 order
granting Defendant's Motion to Dismiss the Hubbards' common law and statutory conversion
claims.

court's prior opinions and orders and the parties' Stipulation Regarding Amount of Damages, the court issued a judgment on April 25, 2008, in favor of the Hubbards and against GeoStar in the amount of $256,372. However, the district court held that GeoStar did not waive its right to appeal the district court's liability findings as determined in the prior orders set forth above.

For the following reasons, we **AFFIRM** the district court's April 17, 2007 order denying the Hubbards' Motion for Summary Judgment, **REVERSE** the district court's January 18, 2008 supplemental order granting the Hubbards' Motion for Summary Judgment, **REVERSE** the district court's February 11, 2008 order denying GeoStar's Motion for Reconsideration, **VACATE** the Judgment for the Hubbards, and **REMAND** the case to the district court for a determination by the trier of fact as to whether time was of the essence in the Purchase Agreement between the parties and to determine any consequent damages that the Hubbards may have sustained.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A.      Factual History

This case involves a series of transactions that the Hubbards and their company, S & K Breeders, entered into with GeoStar and affiliated companies.

#### 1.  The Conversion Agreement

On October 25, 2002, the Hubbards, through S & K Breeders, invested $255,900 in an oil and gas drilling program. (Conversion Agreement, Record on Appeal ("ROA") at 102.) The investment was made with GeoStar, and the drilling program was run by one of its affiliates, Gastar Exploration, Ltd. ("Gastar"). (*Id.*) Based on the Conversion Agreement memorialized by the parties,

2

the Hubbards had the right to convert this investment into shares of Gastar common stock.[2] (*Id.*) The Conversion Agreement included a provision that "[a]ny Gastar stock that you acquire in this conversion shall be restricted from trading for a period of one (1) year following the date of the conversion." (Conversion Agreement, ROA at 101.) If the Hubbards elected to convert their interest into shares of Gastar, the Conversion Agreement required that they give their "assurances of compliance with the appropriate securities laws . . ." (Conversion Agreement, ROA at 102.)

### 2. The Purchase Agreement

The Hubbards exercised their right of conversion on January 21, 2004, which resulted in their ownership of 100,000 shares of Gastar stock. On March 11, 2005, GeoStar agreed to purchase the 100,000 shares from the Hubbards in accordance with the Purchase Agreement executed by the parties. (Purchase Agreement, ROA at 14.) The Purchase Agreement provided that GeoStar would purchase the first 50,000 shares for a cash payment of $175,000. (*Id.*) The Hubbards admit that GeoStar timely made this payment. (Pls.' Mot. for Summ. J., ROA at 40.)

According to the Purchase Agreement, GeoStar was to pay for the remaining 50,000 shares on or before February 3, 2006. (Purchase Agreement, ROA at 14-15.) The Purchase Agreement provided for two alternative methods of payment. First, GeoStar could make a cash payment to the Hubbards, not later than February 3, 2006, in an amount based on the current market value of the

---

[2] The Conversion Agreement read in pertinent part:

    1.<u>Conversion to Public Stock</u>

    The Investor [S & K Breeders] shall have the right at any time beginning December 10, 2003 to January 10, 2004 to exchange his or her working interest for shares of Gastar Exploration, Ltd. ("Gastar") stock . . .

3

shares. (*Id.*) The current market value was to be determined by the average closing price per share for the 15 trading days beginning January 9, 2006 and ending January 27, 2006, but this average could not be less than $3.50 per share. Alternatively, if the average closing price per share for the 15 trading days beginning January 9, 2006 and ending January 27, 2006, was above $3.50 per share, GeoStar, at its "sole discretion" had the "exclusive option" of delivering 50,000 tradable shares to the Hubbards, not later than February 3, 2006. (*Id.*) Specifically, the Purchase Agreement provides, in pertinent part:

> 3.    Seller hereby agrees to sell any and all of Seller's Gastar Conversion Shares, whether in specie, right, title, and/or interest referenced in 2, above, in accordance with the following schedule:
>
> . . .
>
> b.    The remaining Fifty Thousand (50,000) shares of Gastar Exploration Ltd. shall be delivered or purchased in accordance with the following:
>
> i.    Buyer may pay Seller not later than February 3, 2006 the current market value of the remaining 50,000 shares, with the market value defined as the average closing price per share for the 15 trading days beginning January 9, 2006 and ending January 27, 2006, but not less than US$3.50 per share, a total not less than One Hundred Seventy-Five Thousand US Dollars ($175,000); or
>
> ii.   If the average closing price per share for the 15 days beginning January 9, 2006 and ending January 27, 2006 is above three dollars and fifty cents US, (US$3.50) then at the sole discretion of Buyer, and at Buyer's exclusive option, Buyer may forgo option b.(i) and instead, Buyer may deliver to Seller the remaining 50,000 <u>tradable shares</u> to Seller, not later than February 3, 2006.

(*Id.*) (emphasis added.)

The Purchase Agreement also included the following provision:

4

5.     Seller recognizes that the Shares were not registered under the Securities Act of 1933 or other applicable state securities laws.  Seller further acknowledges that neither Seller nor the company were under any obligation to register the Shares.

(Purchase Agreement, ROA at 15.)  Finally, the Purchase Agreement stated that, "[t]his Agreement constitutes the entire agreement between the Seller and the Company regarding the offer and sale of the Shares, which Seller is selling . . ."  (Purchase Agreement, ROA at 17.)

GeoStar admits that it failed to pay cash for the remaining shares or tender tradable shares of stock by February 3, 2006. (Appellant's Br. at 7.) The market value for the shares, *i.e.*, the average share price beginning on January 9, 2006,  and ending January 27, 2006, was $4.58857, which the Hubbards contend would have resulted in a cash payment of $229,428.57. (Appellees' Br. at 6, citing ROA at 26.)

On April 12, 2006, GeoStar tendered a share certificate to the Hubbards as satisfaction for the second set of shares.  (Share Certificate, ROA at 65-66.)  On that date, the Gastar stock had a closing price of $3.70, or a value of $185,000 for 50,000 shares.  The certificate bore a legend that restricted the sale of the shares for one year, or until after April 1, 2007, as required by SEC Rule 144, which governs the sale of unregistered securities.  (*Id.*)  The Hubbards rejected the certificate, as well as the accompanying Power of Attorney to Transfer Securities, because of the restrictive legend.  The Hubbards returned the documents to GeoStar, contending that the tender of shares was not in compliance with the Purchase Agreement, which provided for "tradable shares."[3]  (Pls.' Mot. for Summ. J., ROA at 41.)

---

[3] GeoStar re-sent the certificate and Power of Attorney to Transfer Securities, after the commencement of this suit, and the Hubbards did not return or endorse the documents.  (Pls.' Mot. for Summ. J., ROA at 41.)

**B. Procedural History**

The Hubbards filed suit in the U.S. District Court for the Eastern District of Michigan, asserting claims of breach of contract, common law conversion, and statutory conversion against GeoStar. (Compl., ROA at 4-5.) Thereafter, they filed a Motion for Summary Judgment, arguing that they were entitled to summary judgment on their breach of contract claim. Specifically, the Hubbards argued that a condition precedent to GeoStar's alternative method of performance was that it deliver the shares to the Hubbards by February 3, 2006, and the late delivery of the shares meant this condition precedent was not fulfilled. As a result, the Hubbards maintained that the option to tender shares in lieu of cash was foreclosed to GeoStar, and the only method of performance left to it under the Purchase Agreement was a cash payment to the Hubbards. (Pls.' Mot. for Summ. J., ROA at 43.) Alternatively, the Hubbards argued that GeoStar's tender of Gastar shares was nonconforming because the shares were not "tradable" as provided for in the Purchase Agreement.

GeoStar's response to the Hubbards' Motion did not explicitly confront the Hubbards' argument that the alternative method of performance--the tender of tradable shares--was foreclosed because GeoStar failed to satisfy a condition precedent to its exercise of this option. However, GeoStar explicitly addressed the Hubbards' alternative argument that it did not timely perform, arguing that it had substantially performed by tendering unregistered shares, which complied with the Purchase Agreement.

<u>1. District Court's April 17, 2007 Order Denying the Hubbards' Motion for Summary Judgment</u>

The district court held in its April 17, 2007 order that, because GeoStar conceded that it breached the contract by failing to either pay for or return the shares by February 3, 2006, "the central

6

remaining question pertains to the nature of [the Hubbards'] damage remedy." (Order, ROA at 144.) In assessing damages, the district court did not address the Hubbards' argument that GeoStar was foreclosed from exercising the option to tender stock shares in lieu of making a cash payment because GeoStar failed to satisfy a condition precedent to the option.

Rather, the district court addressed the Hubbards' alternative argument that GeoStar's performance was nonconforming because it failed to tender "tradable shares." Specifically, the district court found that the Purchase Agreement on its face contains an ambiguity: the Purchase Agreement expressly refers to "tradable shares" in paragraph A.3., but paragraph A.5 expressly states that the shares were not registered under the Securities Act of 1933. (*Id.*) Moreover, the district court noted that the parties agreed not to violate any laws in paragraph A.13, but shares that are publicly traded must comply with the applicable securities law. (*Id.*) The district court found that "the ambiguity present on the face of the [Purchase Agreement] due to the use of the term 'tradable shares' is only heightened by considering the Conversion Agreement, *i.e.*, the means by which [the Hubbards] initially acquired the shares." (*Id.*) Accordingly, the district court denied the Hubbards' Motion for Summary Judgment based on its finding that a genuine issue of material fact remains regarding the meaning of "tradable shares."

### 2. District Court's January 18, 2008 Supplemental Order Granting in Part the Hubbards' Motion for Summary Judgment

In its April 17, 2007 Order, the district court noted as a preliminary matter that it "found that [GeoStar] had breached the parties' contract, leaving a single issue as to the damages on [the Hubbards'] claim of breach of contract." (ROA at 157.) However, in accordance with the parties' request at a final pretrial conference on January 15, 2008, the district court further reviewed the

7

Purchase Agreement. The court held that its prior determination that GeoStar breached the contract still holds. However, the court supplemented its prior order "to note that the meaning of the term 'tradable' in subpart (ii) [GeoStar's option to deliver "tradable shares" to the Hubbards] does not inform on the damages analysis." (*Id.*)

Specifically, the district court noted that GeoStar correctly relied upon the contractual provision allowing it to exercise its "sole discretion" and act at its "exclusive option" to return, rather than pay for, the shares. (*Id.* at 158.) The district court concluded, though, that this option was barred after February 3, 2006. (*Id.*) The district court reached this decision based upon its analysis of how the structure of the time limitation of February 3, 2006 differs in the two subparts addressing GeoStar's performance:

> Subpart b.(i) opens with the option for GeoStar to pay for the shares "not later than February 3, 2006" and concludes with a minimum threshold for such a payment. Subpart b.(ii) opens with that same minimum threshold which, if met, is the condition on which Defendant can exercise its sole discretion to return the shares. Importantly, "at the sole discretion of [Defendant], and at [Defendant's] exclusive option, [Defendant] may forgo option b.(i) and instead, [Defendant] may deliver to [the Hubbards] the remaining 50,000 shares to [Plaintiffs], not later than February 3, 2006. Although the same date limitation appears in both subparts, the date in subpart (ii) is linked not only to the timing of the delivery of the shares but to the timing of the election to do so. Given the structure of that sentence, the date of February 3, 2006 circumscribes the time by which Defendant could elect the delivery-of-shares option for payment. The verbs "may forgo" and "may deliver" appear in the conjunctive, such that the date limitation applies to both, not just to the portion of the sentence closest to the date. The failure to deliver the shares by February 3, 2006 could provide grounds for a breach, but, regardless of whether any such delivery occurred, Defendant only had until February 3, 2006 to pursue that course of action. When it did not timely exercise its sole discretion to do so, it lost that avenue of payment.

> In a footnote, the district court also noted that:

> Indeed, interpreting this contract provision as if the date did not operate as a bar would introduce an absurd result. If Defendant could make the election to return the

8

shares at any time, independent of the contracted-for date, then Defendant could wait for a decrease in share price and seek to return the shares at an inopportune time for Plaintiffs.

(*Id.* at 159, n.1.) Accordingly, the district court granted the Hubbards' Motion for Summary Judgment in part, holding that:

[T]he February 3, 2006 date for [GeoStar] to exercise its sole discretion to deliver the shares, tradable or otherwise, has come and gone. [GeoStar's] late proffer of those shares does not cure its breach, and the amount of damages for that breach remains an issue.

(*Id.* at 160.)

### 3. District Court's February 11, 2008 Order Denying GeoStar's Motion for Reconsideration of the January 18, 2008 Supplemental Order

In its Motion for Reconsideration, GeoStar argued that the supplemental order contained the following defects:

(1) First, the Supplemental Order ignores a bedrock principle of contract damages: where a contract has alternate methods of performance, as this one does, a plaintiff claiming breach is entitled to recover, at most, in accord with the alternative that will result in the smallest recovery, even where the defendant failed to make a timely election;

(2) Second, nowhere in the plain language of the contract, the nature of the contract, or the circumstances surrounding the contract did the parties indicate that time is of the essence. As a matter of Michigan law, time is not considered of the essence unless the contract expressly so states or unless the nature of the contract or the circumstances under which it was executed makes it so;

(3) Finally, by failing to accept [Defendant's] tender of the shares, Plaintiffs failed to mitigate their damages. Had Plaintiffs accepted the shares, they would have been in a materially better position as a result of the breach. Accordingly, their claim is barred.

(Def.'s Mot. for Recons., ROA at 166-67.) With regard to the third argument, Defendant notes that the value of the shares on February 3, 2007 was $92,000 at a price of $1.84 per share, while the value

9

of the shares on April 12, 2007 was $113,500 at a price of $2.27 per share, representing a net gain of $21,500. (Def.'s Mot. for Recons., ROA at 170.)

The district court rejected GeoStar's first argument, based on the court's finding that the terms of the Purchase Agreement foreclosed one method of performance, the tender of stock shares, due to GeoStar's failure to tender the stock to Plaintiffs by February 3. (*Id.* at 175.) Second, the district court found that, "although the contract did not expressly use the phrase 'time is of the essence,' the nature of the contract does involve a critical time constraint." (*Id.* at 176.) Finally, the court found that the Hubbards' duty to mitigate "raises issues unrelated to Defendant's liability," and that GeoStar could advance this argument at a bench trial on the valuation of damages. (*Id.*)

### 4. District Court's April 25, 2008 Judgment Entry for the Hubbards and Against GeoStar

The parties stipulated that, assuming liability based only on the court's April 17, 2007, January 18, 2008, and February 11, 2008, opinions and orders, the total amount of damages is $256,372, as defined by the market share price defined in supbart b.i. (Stip. Regarding Amount of Damages, ROA at 179-80.) Consistent with these opinions and orders, the district court ordered that final judgment be entered for the Hubbards and against GeoStar in the amount of $256,372. (Judgment, ROA at 182.) Additionally, the district court noted that, "[GeoStar] does not waive its right to appeal the court's finding of liability as determined in the Court's April 17, 2007, January 18, 2008, and February 11, 2008 opinions and orders." (*Id.*)

## II. STANDARD OF REVIEW

A district court's decision to grant a motion for summary judgment is subject to *de novo* review. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with any affidavits show that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

### III. LAW AND ANALYSIS

GeoStar appeals the district court's orders and Judgment, arguing that the district court erred in granting the Hubbards' Motion for Summary Judgment by reading into the parties' contract a time-is-of-the-essence provision that was not in the Agreement, and then compounded its error when analyzing the Hubbards' damages claim. Specifically, GeoStar argues:

(1) The time for performing the Purchase Agreement was not "of the essence";

(2) GeoStar properly delivered Gastar shares that were not registered under the Securities Act of 1933;

(3) The Hubbards suffered no damages as a result of the "modest" delay in Defendant's tender of the unregistered shares. Under an alternative contract like the Purchase Agreement, a non-breaching party is entitled to damages based on the alternative that will result in the lesser recovery, which is $0. Alternatively, the Hubbards' failure to mitigate their damages also bars any recovery as a matter of law.

(*See* Appellant's Br. at 10-22.)

Conversely, the Hubbards argue that: (1) the option to tender tradable shares expired without being exercised; (2) the nature of the contract is such that time was of the essence; (3) the late tender of shares was nonconforming; and (4) the Hubbards suffered damages. (Appellees' Br. at 9-22.) As a preliminary matter, we note that a review of the record reveals that the Hubbards argue for the first time on appeal that paragraph 3.b.ii. of the Agreement constitutes an option contract and thus must be strictly construed under Michigan law. Because "this court generally will not consider an argument not raised in the district court and presented for the first time on appeal," *Foster v. Barilow*, 6 F.3d 405, 408 (6th Cir. 1993), the court shall not address the Hubbards' first argument.

11

As set forth above, GeoStar conceded that it breached the Purchase Agreement by failing either to pay for or to return the shares to the Hubbards on or before February 3, 2006. (ROA at 144.) As a result, the district court correctly noted in its April 17, 2007 Order denying the Hubbards' Motion for Summary Judgment, that "the central remaining question pertains to the nature of Plaintiffs' damage remedy." (*Id.*) The district court's holding that an issue of fact remained regarding damages was premised on its finding that "the [Purchase] Agreement on its face contained an ambiguity." (*Id.*) Specifically, the district court concluded that the Purchase Agreement on its face expressly referred to "tradable shares" in paragraph A.3, but the Purchase Agreement also expressly states that the shares were not registered under the Securities Act of 1933 in paragraph A.5. (*Id.*)

The district court, however, changed course in its supplemental order, concluding that the Purchase Agreement contained a time-is-of-the-essence provision, and that, therefore, GeoStar only had until February 3, 2006 to exercise b.ii of the Purchase Agreement. Because this time had elapsed, the court determined that GeoStar's option to proffer the shares was foreclosed and it was required to provide the cash payment to the Hubbards. Significantly, *after* reaching the conclusion that time was of the essence, the district court stated that "the meaning of the term 'tradable' in subpart (ii) does not inform on the damages analysis" because "the valuation of those damages does not turn on the term 'tradable.'" As discussed below, we find that the district court was incorrect in this regard.

Under Michigan law, "naming the date when payments fall due is not sufficient to make time the essence of a contract." *Jenkins v. U.S.A. Foods, Inc.,* 912 F. Supp. 969, 974 (E.D. Mich. 1996) (citing *Range v. Davison*, 218 N.W. 789, 792 (Mich. 1928)). In *Jenkins,* the court denied the

plaintiff's summary judgment motion on its contract claim based on its finding that the defendant buyer of a business substantially performed its obligations under the contract, even though it made a periodic interest payment two days after the expiration of a grace period, because there was no indication in the contract that time was of the essence and no harm resulted from the slight delay in repayment. Here, like the *Jenkins* court, the district court analyzed the text of the Purchase Agreement to determine whether time was of the essence. However, the district court's analysis missed a crucial first step because it failed to address a threshold issue, the resolution of which necessarily determines whether the Purchase Agreement contained a time-is-of-the-essence provision: the meaning of the term "tradable shares."

The district court erred in failing to address this crucial issue because the parties' arguments regarding whether time is of the essence in the Purchase Agreement are necessarily premised upon their divergent interpretations of the word "tradable." For example, GeoStar argues that it delivered "tradable shares,"which were subject to a one-year restriction on trading under applicable securities laws, in April 2006. Thus, if the court accepts GeoStar's interpretation of the meaning of "tradable shares," timing was clearly not of the essence in the Purchase Agreement because the shares could not be traded until a year after delivery of the shares. Conversely, the Hubbards construe the term "tradable" to mean that the shares are free from restriction and immediately able to be traded. Thus, the Hubbards argue that the Purchase Agreement shows that time was of the essence because the Hubbards accepted only a seven-day risk--from January 27, 2006, to February 2, 2006--that the share price would dip below $3.50, not the seventy-five day risk imposed upon them by the late delivery of the shares.

13

It is apparent that the district court impliedly accepted the Hubbards' interpretation of the term "tradable shares" in reaching its conclusion that time was of the essence in the Purchase Agreement. For example, the district court stated that "interpreting this contract provision as if the date did not operate as a bar would introduce an absurd result" because "if Defendant could make the election to return the shares at any time, independent of the contracted-for date, then Defendant could wait for a decrease in share price and seek to return the shares at an inopportune time for Plaintiffs." (ROA at 1617.) However, if GeoStar's interpretation of the term "tradable shares" in the Agreement is correct, GeoStar could not "play the market" in the manner described by the district court because it would have no way of knowing what the share price would be almost a year later when the shares were capable of being traded.

The record evidence reveals, however, that there remain genuine issues of material fact with regard to the meaning of "tradable" shares under the Purchase Agreement, as the district court correctly concluded in its April 17, 2007 order. Paragraph A.3 of the Purchase Agreement states that GeoStar has the option of providing the Hubbards "50,000 *tradable* shares." (Purchase Agreement, ROA at 15, emphasis added.) The term "tradable," based on its plain meaning, could be read as requiring the delivery of shares that are immediately tradable. However, other provisions contained in the Purchase Agreement may be read to suggest otherwise. Paragraph A.5 states that the shares of Gastar are unregistered and that GeoStar is under no obligation to register the shares. (*Id.*) Pursuant to securities laws, these shares would not be immediately tradable. *See* 17 C.F.R. § 230.144(d)(1)(ii) (restricting the resale of unregistered securities for a one-year period). Based on the provisions of the Purchase Agreement, the meaning of this term is ambiguous. Therefore,

because there are genuine issues of material fact regarding the meaning of "tradable" shares, the district court improperly granted judgment as a matter of law in favor of the Hubbards.

Instead, the meaning of the term "tradable" must be resolved by the trier of fact, and this determination is critical to the resolution of this case. If it is determined that "tradable" required that GeoStar deliver readily tradable shares on that day, then it would have breached the contract by failing to do so on February 3rd. The Hubbards would then be entitled to resulting damages for this breach based on the average price per share for the fifteen days beginning January 9, 2006, and ending January 27, 2006, as was required under b.ii of the Purchase Agreement. If, however, the contract did not require readily tradable shares, then time was not of the essence, and the Hubbards would appear to have no damages as a consequence. Accordingly, the court remands the case to the district court for a determination by the trier of fact as to whether time was of the essence, based on the meaning of "tradable" shares, and to determine the amount of damages, if any, the Hubbards incurred as a result of GeoStar's breach.

## IV. CONCLUSION

For the reasons stated above, the court **AFFIRMS** the district court's order denying the Hubbards' Motion for Summary Judgment because the district court correctly concluded that genuine issues of material fact exist regarding the meaning of "tradable shares," which precluded a determination of damages at that time. Therefore, the court **REVERSES** the district court's supplemental order granting the Hubbards' Motion for Summary Judgment, **REVERSES** the district court's order denying GeoStar's Motion for Reconsideration of the supplemental order, **VACATES** the Judgment for the Hubbards and **REMANDS** the case to the district court for a determination by

15

the trier of fact as to whether time was of the essence and to determine any consequent damages that the Hubbards may have sustained.